# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BERLINER, CORCORAN & ROWE, LLP  :
                                         :

         *Plaintiff-*          :
         *Counterclaim Defendant*,  :

                                           :

v.                                    :     Case No.: 1:06-CV-01543(CKK)

                                         :

MORDECHAI ORIAN, et al.        :

                                         :

         *Defendants -*       :
         *Counterclaimants*.     :

## PLAINTIFF'S OPPOSITION TO DEFENDANTS'
## MOTION TO EXTEND DEADLINE AND STAY DISCOVERY

      Plaintiff, Berliner, Corcoran & Rowe, L.L.P. [BCR], *pro se* and by counsel, hereby opposes Defendants' Motion to Extend the Deadline for producing expert witness reports and to stay discovery in this case.[1]  Defendants' Motion appears to arise out of Defendants' unwillingness to produce documents and to answer questions relating to attorney-client communications between themselves and the attorneys who represented or currently represent Defendants in the defense of administrative proceedings brought by the United States Department of Labor ["DOL"].  Without access to this information, it will be impossible for BCR to conduct effective discovery in this case on the counterclaims that have been raised against BCR.  Rather than provide this discovery, Defendants wish to impose an unlimited stay on discovery in this case until the conclusion of those proceedings.

---

[1]  Although, as a technical matter, the Motion does not comply with all of the requirements of section 2 of the Court's Scheduling Order of January 18, 2007, this Motion is opposed for the substantive reasons set forth below.

Defendants do not appear to challenge Plaintiff's position that this information is discoverable because Defendants have made it so. Having injected issues into the case that entitle Plaintiff to discover this otherwise privileged information, Defendants now wish to use that privilege as a shield to hinder discovery, thus further delaying any hopes that Plaintiff will ultimately be paid amounts that have been owed to it for more than a year. Plaintiff submits that there is no equitable basis to further delay discovery in this case and that Defendants' Motion should be denied.

I.      PROCEDURAL BACKGROUND

The case arises out of BCR's representation of Defendants in consolidated administrative proceedings commenced against each of the Defendants in the United States Department of Labor, titled, *In the Matter of Global Horizons, Inc., and Mordechai Orian*, Case Nos. 2005-TLC-00006 and 2005-TAE-00001 [hereinafter the "Administrative Proceedings"]. After numerous broken promises by Defendants to make payments on their ever increasing unpaid account, and a decision by Defendants to walk away from a settlement agreement negotiated with DOL on their behalf in good faith by BCR, BCR withdrew as counsel for Defendants in the Administrative Proceedings in June of 2006. Shortly thereafter, Defendants retained Jackson Lewis, LLP as new counsel in the Administrative Proceedings. Defendants recently disclosed that, like many of its counsel in proceedings around the country, Jackson Lewis had withdrawn from those proceedings.[2]

_____

[2] In addition, on July 25, 2007, Yvonne Arvanitis Fossati of the Jackson Lewis firm withdrew as co-counsel to Defendants in a proceeding in the 9th Circuit Court of Appeals, *Global Horizons, Inc. et al. v. U.S. Department of Labor*, Docket #07-55116.

BCR filed its Complaint in the instant action on August 31, 2006, asserting a simple claim for unpaid legal fees amounting to more than $175,000.00. On October 6, 2006, Defendants filed an Answer and Counterclaim. The Counterclaim raised numerous allegations of malpractice by BCR in a transparent attempt to avoid the obligation of paying their legal fees. Plaintiff filed a Reply to the Counterclaim on October 26, 2006.

On November 28, 2006, the Court issued a Scheduling Order setting an Initial Scheduling Conference for January 11, 2007. On December 11, 2006, BCR served Interrogatories and Document Requests on both Defendants. The parties jointly filed a meet and confer statement on December 19, 2006, and the Initial Scheduling Conference was held on January 18, 2007. At that time, the Court ordered the parties to file a discovery plan within ten days.

At about the time of that Scheduling Conference, Defendants notified BCR, through counsel, that they would require a confidentiality agreement before agreeing to produce confidential attorney-client communications between Defendants and Jackson Lewis. Defendants subsequently changed their position and stated that they could not agree to produce these documents, even pursuant to a confidentiality order, because of a concern that such a production would waive their attorney-client privilege. This position was stated in a Joint Request for Discovery Status Conference filed on February 1, 2007 (Dkt. No. 24).

In that Joint Request, Defendants submitted, "Even a production made pursuant to a confidentiality agreement effectuates a total waiver of the attorney-client privilege and work product doctrine in other proceedings." *Id* at 2. Defendants further stated that, "Until the administrative proceedings are ultimately resolved - and Global Horizons is taking every step to

move those proceedings toward their conclusion - Defendants submit that the DOL may be able to seek additional discovery from Global Horizons and Mr. Orian." *Id*. at 4.

At the discovery conference, the Court addressed the possibility of taking discovery on issues unrelated to the attorney-client privilege and whether or not a stay of discovery would be necessary in light of the ongoing administrative proceeding. The Court also ordered the parties to submit a Discovery Plan addressing a number of these issues. Pursuant to the Court's Order, the parties submitted a Joint Discovery Plan on March 2, 2007. In that plan, the parties proposed to submit a Status Report on or before April 17, 2007, regarding the foregoing discovery and whether a stay would be required in light of the ongoing administrative proceeding. As part of this process, BCR hoped to avoid requiring this Court to determine the validity of the Defendants' privilege claim. Defendants' February 1 representation in the Joint Request that they were taking steps to move the DOL proceedings to a conclusion provided a reasonable basis for concluding that these issues would be resolved shortly and the parties could participate in unfettered discovery.

In late April, Defendants approached BCR with a proposal to postpone discovery for 60 days while the parties engaged in settlement negotiations. The parties ultimately entered into an agreement to cease further discovery for 60 days while they engaged in settlement negotiations. Up to that point, Defendants had served responses to BCR's Interrogatories and produced documents that Defendants did not consider to be privileged.[3] As part of that agreement, BCR

---

[3] Defendants have also produced communications between even themselves and BCR, although they consider those documents to be privileged. BCR has, in turn, agreed not to disclose those documents to third parties pending notification to Defendants of such intention in order to allow Defendants to seek a Protective Order, if they so desire.

agreed to defer challenging Defendants' assertion of the attorney-client privilege to July 30, 2007, as long as the Administrative Proceedings remained pending.

After negotiating the terms of this agreement, the parties filed two Joint Motions to extend the previously agreed upon deadlines for sixty days to allow the parties to engage in substantive settlement discussions. Near the end of this sixty day period, both lead counsel and local counsel for Defendants suddenly moved to withdraw their appearances. Now, new counsel has entered her appearance *pro hac vice* and has obtained local counsel.

Thus, BCR is in the same position it was in back in March. Although Defendants have produced materials that they do not consider privileged, they have steadfastly refused to produce their communications with Jackson Lewis and other counsel. Further, contrary to their February 1 assurance, the documents produced to date show no effort by Defendants to move the Administrative Proceedings forward since January of this year. Prior to filing their Motion to Stay, the most recent disclosure of the status of this case comes from Defendants' assertion that "on January 24, 2007, the DOL filed a request for presiding Judge William R. Dorsey to rule on the pending discovery motions and to set a discovery schedule." Joint Request for Discovery Status Conference at 4 (Dkt No. 24). There is no record of Defendants urging Judge Dorsey to rule on the Motions. Defendants now report that the Judge has granted the DOL's motion to compel, denied Defendants' motion for a protective order and entered unspecified orders for the remaining discovery matters. No indication is given as to when discovery might close and when the matter may finally come to a hearing.

Meanwhile, Global's ability to survive as a solvent entity remains very much in doubt. On July 11, 2007, Judge Alan A. McDonald of the Undited States District Court for the Eastern

- 5 -

District of Washington granted Summary Judgment against Global, Orian and others in the

amount of $1,857,000, in *Perez-Farias v. Global Horizons*, Civ. No. 05-3061 (E.D. Wash.).

Although the Judge subsequently granted Motions for Reconsideration filed by other defendants

and ordered a damages hearing, the Judge specifically ruled that:

> The Court will permit the Global Defendants to participate in the
> trial, but only as to the issue of damages. The Court notes,
> however, that the Global Defendants failed to file their exhibit and
> witness lists, which precludes them from introducing any evidence
> as to damages.[4]

In addition, Defendants' hopes to be able to continue their H2-A business grow dimmer

as they attempt to forestall the implementation of an Order issued in unrelated DOL proceedings

barring them from participating in H2-A business for three years.  *Global Horizons, et al. v.*

*United States Department of Labor*, Dkt. No. 07-55116 (9th Cir.).  As time goes by, Plaintiff's

chances of obtaining a collectible judgment appear to be dimming as well.  For this reason,

further delay is significantly prejudicial to Plaintiff's case.


II.    THE ATTORNEY-CLIENT AND WORK PRODUCT PRIVILEGES
       ARE WAIVED AS TO COMMUNICATIONS THAT RELATE TO
       ISSUES THAT THE CLIENT HAS INJECTED INTO THE CASE

Although Defendants do not appear to challenge the Plaintiff's position that they are

entitled to the withheld communications, they do not acknowledge that their own conduct has

caused the waiver of the privileges that protect that information.  The attorney-client privilege

protects communications between a client and his attorney and is based on the desirability of

encouraging those confidential communications.  *Byers v. Burleson*, 100 F.R.D. 436, 440

---

[4] On August 25, 2007, Global filed a Motion to Reconsider these sanctions arguing that
their former counsel in that action was guilty of gross negligence.

(D.D.C. 1983), *citing*, *Coastal States Gas Corp. v. Department of Energy*, 199 U.S. App. D.C. 272, 617 F.2d 854, 865 (D.C. Cir. 1980).  Nevertheless, the privilege does not apply where the purpose of the privilege is not implicated.  *Id.*  For example, the purpose of protecting confidential communications may not apply because the client has invited the inquiry which the privilege is designed to protect against.  *Id.*  Alternatively, the client may waive the privilege because the information that the opposing party seeks is necessary to resolve an issue that the client has injected into the case.  *Id.*

The work-product doctrine applies only to materials that are "prepared in anticipation of litigation or for trial."  Fed. R. Civ. P. 26(b)(3).  The party seeking discovery must also demonstrate that he has "substantial need of the materials [and] is unable without undue hardship to obtain the substantial equivalent of the materials by other means."  *Id.*

A number of cases have held that, by asserting claims of legal malpractice against a former attorney, a client waived both the attorney-client privilege and the work product privilege with respect to communications with other counsel on issues that were important to the malpractice case.  For example, in *Byers*, the plaintiff sued her former attorney for legal malpractice in connection with the attorney's representation of the plaintiff in a medical malpractice case.  As a defense to the legal malpractice case, the attorney asserted that the legal malpractice case was barred by the three year Statute of Limitations.  The defendant-attorney then sought discovery from the plaintiff's successor counsel to determine when the plaintiff or her successor attorney possessed knowledge of the potential legal malpractice claim.[5]  The

---

[5]  The issue of knowledge is relevant to the statute of limitations inquiry in the District of Columbia because of the discovery rule that is applied to that statute.

successor counsel refused to provide the requested information and the attorney filed a motion to compel successor counsel to appear for his deposition.

The trial court found that the plaintiff-client had "waived the privilege because the information which the Defendants seeks is necessary to resolve the precise Statute of Limitations issue which the Plaintiff has interjected into the case." *Id*. at 440. The court noted that the genesis of this doctrine of waiver is grounded in fairness to the opposing party, and reasoned, "If the plaintiff is permitted to argue that her case was timely filed under the appropriate Statute of Limitations, the defendant should be able to respond with facts which answer that precise issue." *Id*. The Court also found that the client had waived any work product protection for the requested materials, because the defendant attorney had established "an overwhelming necessity for the materials, as well as the unavailability of this information in any other form." *Id*. at 440.

These waiver doctrines were also recognized in *Ideal Electronic Security Co. v. International Fidelity Insurance Co.*, 327 U.S. App. D.C. 60, 129 F.3d 143 (D.C. Cir. 1997);

> Under the common-law doctrine of implied waiver, the attorney-client privilege is waived when the client places otherwise privileged materials in controversy. . . . This court explained the rationale underlying the implied waiver doctrine in *In re Sealed Case* . . .
>
>> Implied waiver deals with an abuse of a privilege.... Where society has subordinated its interest in the search for truth in favor of allowing certain information to remain confidential, it need not allow that confidentiality to be used as a tool for manipulation of the truth-seeking process.... [A party asserting attorney-client privilege] cannot be allowed, after disclosing as much as he pleases, to withhold the remainder.

- 8 -

*Id.* at 151 (citations omitted). *See also*, *Pappas v. Holloway*, 114 Wn.2d 198, 204, 787 P.2d 30, 34 (Wash. 1990)("Where it would be manifest injustice to allow the client to take advantage of the rule of privileges to the prejudice of the attorney, or when it would be carried to the extent of depriving the attorney of the means of obtaining or defending his own rights, this court has ruled the privilege is waived."); *Jakobleff v. Cerrato, Sweeney & Cohn*, 97 A.D.2d 834, 835 (N.Y. App. Div. 1983)("A waiver may also be found where the client places the subject matter of the privileged communication in issue . . . or where invasion of the privilege is required to determine the validity of the client's claim or defense and application of the privilege would deprive the adversary of vital information.")(citations omitted); *American Standard, Inc. v. Bendix Corp.*, 80 F.R.D. 706, 710 (D. Mo. 1978)("By voluntarily injecting into a litigated case, a material issue which requires ultimate disclosure by the attorney of the information, ordinarily protected by the privilege, the client makes the information discoverable.").

In *Rutgard v. Haynes*, 185 F.R.D. 596, 598 (D. Cal. 1999), the Court stated, "The attorney-client privilege and work product privilege can be waived by placing protected communications in issue." In that case, Haynes had represented Rutgard as a plaintiff in an antitrust suit. Rutgard was subsequently sued for malicious prosecution by the defendants in that antitrust suit. Rutgard retained new counsel for the defense of the malicious prosecution case, which Rutgard ultimately settled. Rutgard then sued Haynes for malpractice and claimed that the amount Rutgard had to pay to settle the malicious prosecution case was damage caused by Haynes's malpractice. As the court saw it, "Plaintiff [Rutgard] also is attempting to recover the amount he paid to settle the malicious prosecution suit. As discussed below, this claim for damages puts 'in issue' the reasonableness of that settlement." *Id*. at 599.

Ultimately, the court ruled that Haynes had shown, "that the protected information may be relevant to the element of causation and to his affirmative defense of contributory negligence, as well as on the issue of the reasonableness of the damages claimed." *Id*. at 600. The Court also found that "application of the attorney-client privilege would deny Defendant [Haynes] access to the relevant information available regarding this aspect of his defense herein." Id.

The Court also ruled that the work-product privilege had been waived:

> As stated above, by claiming these damages, Mr. Royce's work product may be relevant to the element of causation and to Defendant's affirmative defense of contributory negligence, as well as whether the damages claimed are reasonable. Also as stated above, Defendant needs access to materials from the entire malicious prosecution case to defend against the allegation that his alleged negligence during the antitrust action was in fact the proximate cause of the settlement Plaintiff elected to pay, and Mr. Royce's files are the only source of such information.

*Id*. at 601. As shown below, this precise reasoning applies to the attorney-client and work-product privileges asserted by defendants in the instant case.

III.    DEFENDANTS HAVE WAIVED THE PRIVILEGE PROTECTING COMMUNI-
        CATIONS WITH THEIR COUNSEL IN THE ADMINISTRATIVE PROCEEDINGS

It goes without saying that Defendants in this case have, by suing BCR for malpractice, injected into this case issues that relate directly to communications between Defendants and Jackson Lewis. Certain information is being withheld pursuant to an assertion of the attorney-client and work product privileges that is critical to the Defendants' claims of both breaches of the standard of care and harm proximately caused by those alleged breaches.

For example, the Counterclaim charges BCR with inadequate performance in its representation of Defendants.[6]  In paragraphs 17 through 23 of the Counterclaim, Defendants generally allege inadequate preparation by BCR.  At paragraph 21, Defendants allege a failure to pursue a "strong legal defense."  Specifically, Mr. Orian claims that his conduct was "done in compliance with a specific Federal Statute."  He alleges that the attorneys did not pursue this defense, yet has failed to identify the "specific Federal Statute" that was not pursued. Counterclaim at ¶ 21.  It is manifestly unfair for Defendants to sue BCR for failing to plead a Federal Statute, yet to refuse to identify the statute under a claim of privilege.[7]  "A party asserting attorney-client privilege cannot be allowed, after disclosing as much as he pleases, to withhold the remainder."  *Ideal Electronic Security Co. v. International Fidelity Insurance Co.*, 327 U.S. App. D.C. 60, 129 F.3d 143, 151 (D.C. Cir. 1997)(citation omitted).  *See also*, *United States v. Western Electric Co.*, 132 F.R.D. 1, 3 (D.D.C. 1990)(applying same reasoning to work product materials).

In addition, Defendants claim that BCR was negligent in recommending that Defendants enter into a settlement agreement with the Department of Labor, and that the settlement was "neither fair nor appropriate" because Mr. Wilson "had not presented the entire facts and legal

---

[6]Although Defendants have filed a Motion to Amend their Counterclaim to withdraw certain allegations and insert others, that Motion has not yet been granted by the Court.  As a result, this Motion addresses the claims that are currently before the Court.

[7] Of course, BCR requires much more than the identity of the mysterious statute.  They are also entitled to discover the reasoning behind the assertion that the statute provides a defense, and the facts that either do or do not support the assertion of that defense.

defenses."[8]  Counterclaim at ¶ 25. As described below, these allegations and others have been the

subject of discovery requests by BCR.  Defendants have objected to answering these questions in

full, claiming the attorney-client and work product privileges.

For example, BCR has requested all communications between Global and Jackson Lewis

that relates to this Administrative Proceedings, and as shown below, Global has asserted both

privileges as to such communications.

> 25.    All documents related to the Administrative Proceedings,
> including but not limited to all documents filed in the
> Administrative Proceedings, all correspondence between you and
> any person concerning the Administrative Proceedings and all
> correspondence between the lawyers representing you in the
> Administrative Proceedings and any other person, concerning the
> Administrative Proceedings.
>
> RESPONSE TO REQUEST NO. 25: In addition to the General
> Objections set forth above, Global Horizons further objects to this
> Request as vague, overbroad, unduly burdensome, and seeking
> documents that are irrelevant and not calculated to lead to the
> discovery of admissible evidence. Global Horizons further objects
> to this Request in that it seeks documents protected by the
> attorney-client privilege, work product doctrine, or other applicable
> protections, and/or that contains or reflects Global Horizons'
> strategy, interests, attorney-client communications, work product,
> or other protected material in the ongoing DOL Proceedings.
> Subject to and without waiving the foregoing objections, Global
> Horizons will produce documents that are responsive and that are
> not protected by privileges that arise solely in the context of this
> case, subject to an appropriate confidentiality agreement as
> described in the General Objections above.[9]

---

[8]  This settlement agreement was ultimately voided by Defendants when they refused to
make the settlement payment.

[9]  As noted above, the Defendants have withdrawn their offer to provide privileged
information subject to a confidentiality agreement on the ground that even disclosure pursuant to
such an agreement will waive the privilege.

Document Request No. 26 asks for "All files maintained by you, or any of your attorneys, consultants or agents related to the Administrative Proceedings." Global has asserted the privileges as to this request, as well. Identical requests were made of Mr. Orian, who also asserted the privileges.

BCR also asked both Defendants to describe the "strong legal defense" that BCR allegedly failed to pursue. Again, both Defendants asserted the privilege to this inquiry. For example, Interrogatory 14 to Mr. Orian,[10] and his response appear below:

> 14.    With respect to the allegations in paragraphs 20 [sic 21] of the Counterclaim, identify the "strong legal defense" that Mr. Orian urged Mr. Wilson to pursue. Your answer should include a citation to any statutory provisions or major court opinions that support such defense and a description of all facts that supported the defense. Identify all documents that discuss, concern or relate to the information provided by you in response to this Interrogatory.
>
> RESPONSE TO INTERROGATORY NO. 14: In addition to the General Objections set forth above, Mr. Orian objects to this interrogatory as vague, overbroad, and seeking information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Mr. Orian further objects to this interrogatory in that it seeks information protected by the attorney-client privilege, work product doctrine, or other applicable protections, and/or that contains or reflects Mr. Orian's strategy, interests, or attorney-client communications, work product, or other protected material in the ongoing DOL Proceedings. Subject to and without waiving the foregoing objections, Mr. Orian will respond to this interrogatory pursuant to an appropriate confidentiality agreement as described in the General Objections above.

In addition to injecting these specific factual issues into the case, Defendants have necessarily injected the issue of causation. In order to prove their legal malpractice claim,

---

[10] BCR's Interrogatory No. 13 to Global Horizons asks the same question, to which Global Horizons also asserted the privilege.

Defendants must prove that any alleged harm to the defense of the Administrative Proceedings was proximately caused by the alleged malpractice of their counsel. *Niosi v. Aiello*, 69 A.2d 57, 59 (D.C. 1949) ("Such attorney is not liable for negligence if, notwithstanding the negligence, the client had no cause of action or meritorious defense as the case may be."). Causation in the context of a legal malpractice claim is generally examined in terms of the "case within a case." *Macktal v. Garde*, 111 F. Supp. 2d 18, 21 (D.D.C. 2000)(collecting cases). In other words, to prove that the defense of the Administrative Proceedings case was damaged by BCR, Defendants must prove that they had a valid defense. In other words, did any alleged act or omission by BCR, such as inadequate preparation or failure to raise defenses, cause any harm to the ongoing defense of Defendants' case in the ongoing Administrative Proceedings? Plaintiff has a substantial need of this information and is unable to obtain its substantial equivalent by other means.

BCR has addressed these issues in both Document Requests and Interrogatories. For example, Document Request No. 19 to Global Horizons asks for documents relating to Global's damage claims.[11]

> 19.     All documents relating to your claim that you suffered damages as a result of BCR's alleged conduct.
>
> RESPONSE TO REQUEST NO. 19: In addition to the General Objections set forth above, Global Horizons further objects to this Request as vague, overbroad, unduly burdensome, and seeking documents that are irrelevant and not calculated to lead to the discovery of admissible evidence. Global Horizons further objects to this Request in that it seeks documents protected by the attorney-client privilege, work product doctrine, or other applicable protections, and/or that contains or reflects Global Horizons'

---

[11]  The request to Mr. Orian was identical. He also asserted the privilege.

strategy, interests, attorney-client communications, work product, or other protected material in the ongoing DOL Proceedings. Subject to and without waiving the foregoing objections, Global Horizons will produce documents that are responsive and that are not protected by privileges that arise solely in the context of this case, subject to an appropriate confidentiality agreement as described in the General Objections above.

In addition, BCR asked Defendants for information concerning Defendants' allegation that BCR's conduct harmed their defense in the Administrative Proceedings, as in Interrogatory No. 20 to Mr. Orian:[12]

20. As to paragraph 36 of the Counterclaim, identify the legal defenses that BCR failed to pursue and the Defendants' positions that BCR failed to competently advocate. Identify all documents that discuss, concern or relate to the information provided by you in response to this Interrogatory.

RESPONSE TO INTERROGATORY NO. 20: In addition to the General Objections set forth above, Mr. Orian objects to this interrogatory as vague, overbroad, and seeking information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Mr. Orian further objects to this interrogatory in that it seeks information protected by the attorney-client privilege, work product doctrine, or other applicable protections, and/or that contains or reflects Mr. Orian's strategy, interests, or attorney-client communications, work product, or other protected material in the ongoing DOL Proceedings. Without waiving the foregoing objections, Mr. Orian will respond to this interrogatory pursuant to an appropriate confidentiality agreement as described in the General Objections above.

The inquiry will not end with these questions. In addition, it will be important to ask Defendants' counsel in the Administrative Proceedings whether the defense has been negatively affected by any prior acts or omissions by BCR. Jackson Lewis is the only reliable source for

---

[12] BCR Interrogatory 19 to Global Horizons is identical. Global Horizons asserted the privilege in its response, as well.

this information because they presumably are closest to the legal and factual issues involving the defense of the Administrative Proceedings.

If Defendants' counsel respond affirmatively, additional questions need to be asked about the nature of the alleged harm to the defense and what efforts have been undertaken to mitigate the alleged harm. Answers to these questions can lead to additional questions of Global Horizons employees concerning what information has or has not been provided to Jackson Lewis that might have prevented or mitigated the alleged harm. It is difficult, if not impossible, to begin discovery of any of the Global Horizons fact witnesses, including Mr. Orian, without this crucial information. Any deposition would only provide part of the picture while leaving out issues essential to BCR's defense.

To paraphrase the court's holding in *Byers v. Burleson*, if Defendants are permitted to argue that their case was damaged by BCR's representation, BCR should be able to respond with facts that answer that precise issue. It cannot respond effectively, however, without taking discovery on this very issue.

Defendants have argued that the disclosure of this information will prevent them from withholding "sensitive strategic information in the administrative proceedings." Joint Request for Discovery Status Conference at 4 (Dkt. No. 24). They further have argued that production of such information "would severely compromise Defendants' position in the administrative proceedings, in which Global Horizons' very ability to continue its business is at stake."[13] Now

---

[13] They make this claim despite the fact that Global Horizons was barred in 2006 from participating in H-2A Programs for a period of three years.

they take the position that they cannot even provide expert testimony in support their claims of legal malpractice without jeopardizing their defense of those proceedings.

The fact remains that, until only recently, the Administrative Proceedings appear to have lain dormant since January and there is no evidence that Global Horizons has been taking any steps to move those proceedings towards a conclusion.  Indeed, it is in Defendants' best interest to avoid the conclusion of those proceedings for at least three reasons:   Pushing those proceedings forward would (1) require Defendants to incur additional legal fees they clearly are striving to avoid; (2) expose Defendants to the risk of being ordered to pay significant back wages and civil money penalties arising out of the DOL Proceedings; and (3) cause this case to move forward thereby requiring Defendants to expend further legal fees in this case and face the prospect of yet another series of decisions adverse to Defendants' interests.

While it was reasonable for the parties to agree, for a limited period of time, to await the conclusion of those proceedings to avoid having to force this issue, BCR should not be required to wait forever.  A year has now passed since BCR has filed its lawsuit to recover its unpaid legal fees.  There appears to be no end in sight to the DOL Proceedings, and BCR's fees are being held hostage by an assertion of the attorney-client privilege.  Having injected the issues that make those privileged communications relevant to this case, Defendants can not continue to hide behind that barrier in order to frustrate BCR's ability to defend itself from these claims of malpractice.

For these reasons, BCR respectfully requests that the Court deny Plaintiff's Motion.  In the event that the Court agrees and denies the Motion, Plaintiff requests that Defendants be required to provide their proponents' expert witness reports forthwith.  Plaintiff has already

served their expert witness report on issues for which it is the proponent.  In the event the Court

does not stay discovery and requires Defendants to serve their proponents' expert witness reports

at a later date, Plaintiff will request that opponents' expert witness reports be due 30 days after

service of the proponents' reports.  In addition, Plaintiff requests that any extension of time to

serve proponent's reports apply to all parties.

<div style="margin-left: 40%;">

Respectfully submitted,

BERLINER, CORCORAN & ROWE, L.L.P.

By:   /s/ Thomas E. Wilson
  Thomas E. Wilson #132704
  Jason A. McClurg #491172
  1101 17th Street, N.W., Suite 1100
  Washington, DC 20036-4798
  (202) 293-5555
  Plaintiff, *Pro Se*


JORDAN COYNE & SAVITS, L.L.P.

By:    /s/ John Tremain  May
  John Tremain May #294199
  1100 Connecticut Ave., N.W., Suite 600
  Washington, D.C.  20036
  (202) 496-2805 –  (202) 496-2800 (fax)
  jmay@jocs-law.com
  Attorneys for Berliner, Corcoran & Rowe,
  L.L.P. in defense of the Counterclaim

</div>