UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BERLINER, CORCORAN & ROWE, L.L.P., <br><br>*Plaintiff,*<br><br>v.<br><br>MORDECHAI ORIAN,<br>GLOBAL HORIZONS, INC.,<br><br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 1:06-CV-01543(CKK)<br>)<br>) (The Honorable Colleen Kollar-Kotelly)<br>)<br>) |

**DECLARATION OF CHRYSTAL BOBBITT IN RESPONSE TO THE ORDER TO SHOW CAUSE RE FAILURE TO UPDATE THE COURT AS TO STATUS OF THE MOTION TO AMEND THE COMPLAINT AND ADDITIONAL ISSUES**

Pursuant to Local Rule 83.2(d), I, Chrystal L. Bobbitt, Esq., declare under penalties of perjury as follows:

1. I am an attorney duly licensed to practice law before all State and Federal Courts in California and the 4th and 9th Circuit Courts of Appeal. I was admitted *Pro Hac Vice* to represent defendants and counterclaimants Mordechai Orian and Global Horizons, Inc., in the above captioned matter.

2. I telephonically attended the status conference on October 15, 2007. The Court ordered defendants to review and update the Court as to its intentions regarding the pending Motion to Amend the Complaint. Based on my notes and recollection, the Court did not set a specific date to comply with this order during the telephone conference. It appears there was a written Order issued by the Court on October 16 setting a date of October 26, to resolve this issue regarding the Motion to Amend the Complaint filed by former Counsel, Kari Hong, before

her withdrawal.  The Order issued on October 16 was never served on me and I did not receive it.  I registered for ECF filing when I submitted my *Pro Hac Vice* application but for some reason was never properly input in the system.  I only learned of the October 16 Order because I was notified by our local counsel, Eric Stravitz, that the Court had issued an Order to Show Cause Re Failure to Comply with the Court's Order.  I had my paralegal contact the ECF help desk and was informed that there had been some error in the processing of my ECF registration form such that notices and filings intended for my office were going to some other unknown attorney and were not being properly routed to my email address for service.  There was also an assurance that the system would be corrected immediately so that I would receive notices and filings from the ECF system.

   3. The reason that I did not update the Court sooner about the Motion to Amend is because of travel during most of the last few weeks and the fact that I simply was not aware that it was due on that specific date because I had not received the Court's Order of October 16 due to the error with the ECF Notification System.

   4. With regard to the Motion to Amend, I have reviewed the pleadings and the motion and determined that defendants do want to go forward on the Motion to Amend the Complaint.  I believe it is necessary to defendants' position in this case and reflects changes in the defense theory of the case based on information adduced during discovery.  However, defendants would like an opportunity to withdraw and re-file the motion.  Based on my review of the file and an issue raised during the status conference, I believe it is necessary and appropriate to modify the previously filed Motion to Amend.

5. There is one other matter I would like to address regarding the status conference. In considering possible resolutions to the ongoing issue of production of attorney client privileged documents, the Court also ordered defendants to file a motion for a protective order in the Department of Labor administrative proceeding to protect the confidentiality of documents sought to be produced in this case.

6. When the Court proposed this as a solution to the confidentiality problem during status conference, I indicated was not sure this would resolve the confidentiality problem but that I would pursue it. I was planning to file and submit the draft confidentiality agreement on November 6 as ordered by the Court but realized upon further evaluation and consultation with my client and associates that we could not effectively draft an order that would actually serve the purpose intended. I wanted to bring this issue to the Court's attention for further exploration last week but was out of town on another legal matter. We are very concerned that filing a motion for a protective order would do far more harm than good in protecting Global's privileged communications.

7. As opposing counsel is aware, Global Horizons is involved in litigation in several jurisdictions with a relatively small and interconnected group of opposing parties. Most of the cases involve allegations of violations of H-2A regulations. The H-2A is a program by which Global would recruit and employ domestic and foreign labor for placement in the agriculture industry. Global's cases almost invariably involve enforcement actions by the Department of Labor and private actions prosecuted by local branches of National Legal Services Agencies for the same alleged violations. The fact that we are facing multiple law suits across the country by essentially different branches or affiliates of the same organizations is itself an indication of the

spread of information between these agencies.  These agencies work very closely together and we are aware based on past experience that they freely communicate with each other and share information locally and nationally for use in prosecuting claims against Global Horizons.  I am informed and believe that Global Horizons is being discussed on national list serves in which these agencies participate.  Further, Global Horizons, being involved in very politically charged immigration issues, has been the subject of extensive local and national media coverage regarding these law suits.

Under these circumstances, filing a motion for a protective order in the DOL proceeding regarding the dissemination of attorney –client communications would be like putting blood in the water and hoping the sharks don't come.  Neither the Court nor Global Horizons would have any feasible means to police or enforce a protective order.  Further even if a protective order was granted, it would only protect Global from direct or apparent use of the information in the DOL proceeding.  It would not protect against leaks of this information to other adversaries of Global.  It would not prevent other parties from seeking the information and ultimately sharing it with the DOL.  Global would have to seek similar protective orders in several other cases in multiple jurisdictions, any of which could deny the protective order and leave global fully exposed and unprotected. The more people who are aware of the availability of this information the more impossible it will be to control it.  This is a terrible risk to expose Global to.

8.      For these reasons, defendants respectfully request to be relieved from the Court's Order to file a Motion for a Protective Order in the underlying DOL case.  It would simply alert Global's adversaries of the release to plaintiff of potentially damaging information and the

consequences could be catastrophic and uncontainable. I am exploring some other options to resolve this issue and seeking alternative avenues to reach early resolution of this case.

9. I hereby declare under penalty of perjury that the foregoing is true and correct. This statement was executed under penalty of perjury on this 16th day of November at Los Angeles, CA.

Dated: November 16, 2007        /s/ Chrysal L. Bobbitt
Chrystal L. Bobbitt
***In-house Litigation Counsel***
11111 Santa Monica Blvd. Suite 1440
Los Angeles, CA. 90025
P: 310.234.8475 x106
F: 310.234.0786
chrystal@gmpusa.com