**EXHIBIT A**

THOMAS G. CORCORAN, JR.
WAYNE H. BUSCH
CLEMENS KOCHINKE
RICHARD LANDFIELD
BENJAMIN H. FLOWE, JR.
BRUCE ZAGARIS
JOHN A. ORDWAY
JAMES L. MARKETOS
JAY A. ROSENTHAL
MARY-ELLEN NOONE
ALEXANDER C. VINCENT
DANIEL FISHER-OWENS

## BERLINER, CORCORAN & ROWE, L.L.P.
ATTORNEYS-AT-LAW
1101 SEVENTEENTH STREET, N.W.
SUITE 1100
WASHINGTON, D.C. 20036-4798
TELEPHONE (202) 293-5555   FAX (202) 293-9035
WWW.BCR.US

THOMAS G. CORCORAN (1900-1981)
JAMES H. ROWE, JR. (1909-1984)

COUNSEL
THOMAS E. WILSON

November 14, 2005

**PRIVILEGED AND CONFIDENTIAL**

Mr. Mordechai Orian
President & Chief Strategic Officer
Global Horizons, Inc.
11111 Santa Monica Boulevard
Suite 1440
Los Angeles, California 90025-3348

Re: Global Horizons Inc. ("Global") -- U.S. Department of Labor ("DOL") Determination and Notice of Prospective Denial of Temporary Alien Agricultural Labor Certification for Three Years of Global and Mordechai Orian (File Number 1280844)

Dear Mr. Orian:

We are pleased that you have asked us to act as lead counsel in consultation with James S. Holt, Ph.D., of McGuiness Norris & Williams LLP in connection with the captioned matter now in process before DOL.

Our fees are based on our usual hourly rates, plus out-of-pocket expenses. The level of our rates are adjusted periodically, usually at the beginning of each calendar year. You will be billed monthly for hours actually worked on your behalf. We expect our statements to be paid in the normal course of business within thirty (30) days of receipt. We reserve the right to charge interest, at a rate of 1½ percent per month, on any balance over thirty (30) days and, if necessary, to withdraw from providing further services if the payment history is unsatisfactory.

Our bills are itemized. They reflect a summary of the work performed during the period, the attorneys who performed the work, the number of hours expended, and the attorneys' hourly rates. Out-of-pocket expenses are also itemized.

The hourly rates charged by our firm range from $140 to $410 per hour. My standard billing rate is currently $375 per hour. It is anticipated that I will be assisted in this matter by Alex Vincent and Jason McClurg of our firm. Alex Vincent's rate is $220 per hour and Jason McClurg's rate is $140 per hour. Other attorneys in the firm may be called on to assist in the representation. To the extent possible, and where appropriate, we will have the necessary work performed by more junior people in the firm in order to keep costs down as much as possible.

BERLINER, CORCORAN & ROWE

Mr. Mordechai Orian
November 14, 2005
Page 2

  If necessary to defend your or Global's interests in this case, we will seek outside help from professionals (*e.g.*, expert witnesses, translators, private investigators, process servers, court reporters, and videographers) who possess the skills and experience we believe are needed for assistance. We anticipate needing to engage court reporters, videographers, and possibly translators for the depositions both sides anticipate taking in December 2005 and January 2006. Other such professionals are often necessary in some capacity during the course of an administrative proceeding. Of course, we will not engage any professionals (other than the court reporters, videographers, and translators just mentioned) without first consulting you.

  We have performed our usual conflicts check and we know of no reason why we cannot undertake the representation in this matter. In addition, it is the policy of our firm to require new clients to pay an up-front retainer amount before we perform significant work. In that regard, we request that you provide an up-front retainer of $20,000, $5000 of which we hereby acknowledge having received. We will deposit the full retainer amount in our operating account (not our trust account) and bill against it. Each month, we expect the retainer to be replenished until the conclusion of the representation. If any portion of the retainer amount remains unexpended at the end of our work, we will return the balance promptly.

  If the terms outlined herein are acceptable to you, please sign below and return a copy of this letter to us at your earliest convenience. In the meantime, should you have questions, please call.

Sincerely,

Thomas E. Wilson

I understand and agree to the above:

Mordechai Orian
President of Global Horizons Inc.
and Personally

_NOV. 15 2005_
Date

**EXHIBIT B**

**BERLINER, CORCORAN & ROWE, L.L.P.**
ATTORNEYS-AT-LAW
1101 SEVENTEENTH STREET, N.W.
SUITE 1100
WASHINGTON, D.C. 20036-4798
TELEPHONE (202) 293-5555   FAX (202) 293-9035
WWW.BCR.US

THOMAS G. CORCORAN, JR.
WAYNE H. RUSCH
CLEMENS KOCHINKE
RICHARD LANDFIELD
BENJAMIN H. FLOWE, JR.
BRUCE ZAGARIS
JOHN A. ORDWAY
JAMES L. MARKETOS
JAY A. ROSENTHAL
RAY GOLD
ALEXANDER C. VINCENT
DANIEL FISHER-OWENS
KARL W. ABENDSCHEIN
LAINA C. WILK
JASON A. McCLURG

THOMAS G. CORCORAN (1900-1981)
JAMES H. ROWE, JR. (1909-1984)

COUNSEL
THOMAS E. WILSON
EDWARD M. LURIA

October 16, 2007

**By E-Mail <chrystal@gmpusa.com>**
**and First Class Mail**

Chrystal L. Bobbitt, Esq.
In-House Litigation Counsel
Global Horizons Inc.
11111 Santa Monica Boulevard
Suite 1440
Los Angeles, CA 90025-3348

    Re:  *Berliner, Corcoran & Rowe, L.L.P. v. Mordechai Orian, et al.* -- BCR
         November 14, 2005 Engagement Letter

Dear Ms. Bobbitt:

    Reference is made to the status conference held by Judge Koller-Kotally earlier today. Per your request, we are enclosing a copy of our firm's November 14, 2005 engagement letter relating to the referenced case. That letter speaks for itself and, as we have represented to the court, was signed by your client, Mordechai Orian, as "President of Global Horizons Inc. and Personally." That letter can also be found at Exhibit 1 to BCR's August 31, 2006 verified complaint.

    Quite aside from our desire to have Mr. Orian financially responsible personally to pay our fees, Mr. Orian had to sign our engagement letter personally since he is a Named Respondent in the DOL Proceedings and our engagement letter had to make clear that we were representing in the DOL Proceedings both Respondent Global Horizons Inc., a corporation, and Respondent Mordechai Orian, a named individual.

    Please let us know if you have any questions.

                                            Sincerely,

                                            Thomas E. Wilson

cc:    Eric N. Stravitz (w/enc.) <eric@metrodclaw.com>
                            * * *
        John T. May (w/enc.) <jmay@jocs-law.com>

**EXHIBIT C**

BERLINER, CORCORAN & ROWE, L.L.P.
ATTORNEYS-AT-LAW
1101 SEVENTEENTH STREET, N.W.
SUITE 1100
WASHINGTON, D.C. 20036-4798
(202) 293-5555

**PRIVILEGED AND CONFIDENTIAL**
**ATTORNEY WORK PRODUCT**

Global Horizons, Inc.
Attn: Mr. Mordechai Orian
11111 Santa Monica Boulevard
Suite 1440
Los Angeles, CA 90025

July 7, 2006
Client No: 142-05

# FINAL BILL

### FOR PROFESSIONAL SERVICES RENDERED ON BEHALF OF GLOBAL HORIZONS, INC. FOR JUNE 2006

Representation in connection with administrative proceedings pending before the U.S. Department of Labor arising out of Global's business activities in Arizona and Hawaii.

| | |
|---|---|
| Total Fees: | $ 13,614.00 |
| Total Disbursements: | $ 148.25 |
| Total Fees/Disbursements This Period: | $ 13,762.25 |
| Previously Billed Amount: | $ 163,376.11 |
| **AMOUNT DUE:** | **$ 177,138.36** |

BERLINER, CORCORAN & ROWE, L.L.P.
ATTORNEYS-AT-LAW
1101 SEVENTEENTH STREET, N.W.
SUITE 1100
WASHINGTON, D.C. 20036-4798
(202) 293-5555

**PRIVILEGED AND CONFIDENTIAL**
**ATTORNEY WORK PRODUCT**

July 7, 2006
Client No: 142-05

Global Horizons, Inc.
Attn: Mr. Mordechai Orian
11111 Santa Monica Boulevard
Suite 1440
Los Angeles, CA 90025

# FINAL BILL

### FOR PROFESSIONAL SERVICES RENDERED ON BEHALF OF GLOBAL HORIZONS, INC. FOR JUNE 2006

| Date | Attorney | Hours | Description |
|---|---|---|---|
| 6/02/06 | T. Wilson | 2.50 | Send a report to J. Holt re status of Global/DOL litigation; review J. Holt response; teleconference with M. Orian and A. Vincent re DOL press release and impact on Global. |
| 6/05/06 | T. Wilson | 2.80 | Review status of the case; review Holt e-mail and respond; review A. Vincent note forwarding N. Garcia (DOL) e-mail demanding payment; teleconferences with M. Orian and A. Vincent re developments. |
|  | A. Vincent | 1.60 | Review e-mail from DOL's counsel re Global's failure to pay amounts required by settlement agreement; teleconference with M. Orian re status of settlement. |
| 6/06/06 | T. Wilson | 2.80 | Conference with A. Vincent re status; teleconferences with client; draft detailed advise memoranda to client providing guidance on possible consequences of not honoring the settlement agreement. |

Global Horizons - Billing
July 7, 2006
Page 2

|  |  |  |  |
|---|---|---|---|
|  | A. Vincent | 2.30 | Conference with T. Wilson re Global's decision not to perform settlement agreement obligations; advise T. Wilson re drafting of e-mail to client re inadvisability of failing to perform settlement agreement with DOL. |
|  | J. McClurg | 1.90 | Discuss with A. Vincent implications of not paying settlement and future discovery obligations; assist T. Wilson in drafting email to M. Orian regarding same. |
| 6/07/06 | T. Wilson | 2.70 | Draft advice e-mail summarizing the status of the case and possible Global approaches with DOL going forward; confer with A. Vincent and J. McClurg; consider Aloun Farms dimension raised by client; consider response to client inquiry. |
|  | A. Vincent | 2.00 | Advise T. Wilson re advice to client re litigation strategy and nature and scope of BCR representation in view of collapse of settlement process. |
| 6/09/06 | T. Wilson | 1.00 | Teleconference with client re communications with G. Friday (DOL); client request that we provide draft of press release for Global to consider; teleconferences with A. Vincent and J. McClurg to sketch out contents of possible press release, etc. |
|  | A. Vincent | .70 | Teleconferences with T. Wilson re DOL's possible intentions after M. Orian advised of DOL's G. Friday call to Orian re settlement situation. |
|  | J. McClurg | .30 | Teleconference with A. Vincent and T. Wilson to discuss press release and letter to G. Friday. |
| 6/12/06 | T. Wilson | 3.20 | Review e-mail received from N. Garcia (DOL) requesting status report on the settlement payment; conference with client on his wishes in response; client requests draft of summary of case for the press release being considered by Global; draft e- |

Global Horizons - Billing
July 7, 2006
Page 3

|          |              |       |                                                                                                                                                                                                                                |
|----------|--------------|-------|----|
|          |              |       | mail to client to be sent with proposed draft of Global press release. |
|          | J. McClurg   | 6.60  | Assist T. Wilson in drafting press release and cover letter regarding H-2A settlement. |
| 6/13/06  | T. Wilson    | 2.20  | Confirm in e-mail to client teleconference of 6/12; summarize state of play and client's intentions going forward; confer with J. McClurg re issues to be included in client advise; organize material for wind-down of representation. |
|          | J. McClurg   | 1.60  | Consult T. Wilson regarding press release and future course of Global defense. |
| 6/14/06  | T. Wilson    | 1.80  | Review Global press release; teleconference with J. Stanton re status of DOL matter and Aloun arbitration; teleconference with A. Ben-Ezra re status; confer with J. McClurg. |
|          | J. McClurg   | .10   | Review final Global Horizon press release. |
| 6/16/06  | T. Wilson    | 1.00  | Teleconference with B. Jones to review the latest filing by DOL; telephone calls to M. Orian and A. Ben-Ezra; monitor voicemails. |
| 6/18/06  | T. Wilson    | .50   | Retrieve voicemails and return the call of A. Maldonado re Global, etc. |
| 6/19/06  | T. Wilson    | 2.00  | Review DOL filings re re-initiation of litigation; review e-mails; respond to A. Ben-Ezra e-mail of 6/15; interoffice conference on the pending situation. |
|          | A. Vincent   | 3.00  | Review DOL's Notice of Respondents' Non-Compliance with Settlement Agreement and supporting papers; conference with T. Wilson to prepare for teleconference with M. Orian and A. Ben-Ezra re nature of BCR's representation of |

Global Horizons - Billing
July 7, 2006
Page 4

|  |  |  |  |
|---|---|---|---|
|  |  |  | clients going forward; draft notice of withdrawal; draft letter to clients re DOL's motion to compel discovery responses and impending withdrawal of BCR as clients' counsel; conference with T. Wilson re same; teleconference with M. Orian and A. Ben-Ezra re same and re clients' plans to bring account with BCR current as soon as possible. |
|  | J. McClurg | .30 | Review email correspondence; review DOL pleadings regarding resumption of litigation. |
| 6/20/06 | T. Wilson | .80 | Teleconference with A. Vincent re developments, decision to withdraw from representation of Global in coordination with client, etc. |
|  | A. Vincent | 4.20 | Draft motion for enlargement of time to respond to DOL motion to compel discovery responses; draft e-mail to client re same; review ALJ's order denying Global's motion for summary decision on debarment proceeding; draft e-mail to client re same; conference with T. Wilson and teleconference with M. Orian re same. |
| 6/21/06 | T. Wilson | .70 | Teleconference with A. Vincent to monitor developments and to assure orderly withdrawal from Global litigation. |
| 6/27/06 | A. Vincent | .30 | Teleconference with J. Stanton, Esq., re his plans for impending withdrawal as co-counsel for Global in DOL H-2A enforcement proceedings. |

T. E. Wilson      24.00 hours at $375
A. Vincent       14.10 hours at   220
J. McClurg       10.80 hours at   140

Global Horizons - Billing
July 7, 2006
Page 5

### Disbursements

| | |
|---|---:|
| Copies | 113.11 |
| Postage | .95 |
| Cabfare | 13.00 |
| Delivery | 21.19 |
| | 148.25 |

| | |
|---|---:|
| Total Fees: | $ 13,614.00 |
| Total Disbursements: | $ 148.25 |
| Total Fees/Disbursements This Period: | $ 13,762.25 |
| Previously Billed Amount: | $ 163,376.11 |
| **AMOUNT DUE:** | **$ 177,138.36** |

**EXHIBIT D**

Home > For Lawyers > Ethics > Legal Ethics > Opinions

## Opinion 269

### Obligation of Lawyer for Corporation to Clarify Role in Internal Corporate Investigation

A lawyer retained by a corporation to conduct an internal investigation represents the corporation only, and not any of its constituents, such as officers or employees. Corporate constituents have no right of confidentiality as regards communications with the lawyer, but the lawyer must advise them of his position as counsel to the corporation in the event of any ambiguity as to his role.

A corporation may hire and pay the fees of a lawyer to represent corporate constituents, so long as there is no interference with, or diminution of, the lawyer's obligations to his constituent client. Where the lawyer proposes to represent the corporation and a constituent, or two or more constituents, the general conflict provisions of Rule 1.7 must be applied to determine the propriety of the dual representation, and appropriate client disclosures must be made and consents received.

### Applicable Rules

- Rule 1.7 (Conflict of Interest: General Rule)
- Rule 1.8(e) (Conflict of Interest: Prohibited Transactions)
- Rule 1.13 (Organization as Client)
- Rule 4.3 (Dealing With Unrepresented Person)

### Inquiry

This inquiry presents several questions concerning the obligations of a lawyer conducting an investigation of possible wrong-doing by a corporate client or its employees. Such investigations are not uncommon today. A corporation may, for example, investigate itself as part of a routine regulatory compliance program, it may do so in response to information received from some source suggesting that a violation of law may have occurred, or it may do so in the course of, or in anticipation of, a government proceeding. During such an investigation, counsel for the corporation will likely review records and files maintained by various corporate officials and employees, and may interview such persons at various levels of seniority within the corporation.

The Inquirer asks whether an attorney-client relationship is created between the corporate counsel performing the investigation and corporate employee-interviewees; what professional obligations, if any, are owed by the lawyer to the employees in such a circumstance; and what is the nature and extent of confidentiality which applies to information acquired by the lawyer from the employees. The inquiry also raises, inferentially, a question about the general obligations of counsel retained by the corporation to represent the interests of its employees.

Although the inquiry poses its questions in the context of outside counsel performing the legal work, in-house counsel may perform similar activities. Our opinion extends to both types of counsel.

### Discussion

### Attorney-Client Relationship

Under the former Code of Professional Responsibility, the relationship of a lawyer for a corporation to corporate officials was addressed in Ethical Consideration (EC) 5-18, but not in the Code itself. EC 5-18 read, in relevant part, that:

> A lawyer employed or retained by a corporation or similar entity owes his allegiance to the entity and not to a stockholder, director, officer, representative or other person connected with the entity.

That ethical principle was elevated in stature in the Rules of Professional Conduct, where it (and related principles) were incorporated in Rule 1.13.[1]

Subpart (a) of Rule 1.13 makes clear that, when a lawyer is retained to represent a corporation, the lawyer's client is the corporation *only*, acting through its duly authorized constituents (such as its officers and employees).[2] The situation was no different under the Code of Professional Responsibility. See Opinion No. 159. In this circumstance, then, the lawyer does not have, by reason of the lawyer's representation of the corporation, attorney-client responsibilities to the corporate constituents with whom he may be dealing in the course of his investigation.

Nevertheless, in some settings, a lawyer for the corporation may have an incentive, grounded in the lawyer's desire to further his client's interests, to minimize any perception by the corporate constituent that the corporation and the constituent may have differing interests in the subject matter of the representation, lest such perception affect the willingness of the constituent to be candid and forthcoming with the lawyer. While a lawyer's obligation to represent a client zealously (Rule 1.3(a)) might suggest that the client's need for information from the constituent is the lawyer's only concern, the Rules specifically require that the lawyer be mindful of the interests of the constituent.

Subpart (b) of Rule 1.13 makes clear the obligation of the lawyer to inform corporate constituents of the identity of the lawyer's client when there is a potential for conflict between the position of the corporation and that of the constituent. Such a potential for conflict is a possibility where, for example, the person being interviewed was more than a passive observer of some act or omission which may be attributable to the corporation, but was instead a person who may have been directly or indirectly responsible for the questioned conduct. Such person's interests may be in conflict with those of the corporation, which may want to discipline or terminate him/her or which may, vis-à-vis a third-party (such as a government agency or a civil litigant), endeavor to distance itself from the person's conduct, such as by acknowledging the conduct but denying responsibility for it, or by characterizing the conduct as that of an employee acting contrary to company policy or direction.

The corporate constituent being interviewed by a lawyer for the corporation, however, may consider the lawyer as also representing the employee's personal interests, absent a warning to the contrary. The employee could understandably conclude that, since he is employed by the corporation and the lawyer has been retained to serve the interests of the corporation, the lawyer would not be pursuing interests adverse to those of the employee. Rule 1.13(b) specifically addresses this potential for misunderstanding by the corporate constituent by requiring the lawyer to explain the identity of the lawyer's client "when it is apparent that the organization's interests may be adverse to those of the constituents with whom the lawyer is dealing."[3] Comment [8] to Rule 1.13 advises the lawyer in such

a situation to

> advise any constituent . . . of the conflict or potential conflict of interest, that the lawyer cannot represent such constituent, and that such person may wish to obtain separate representation. Care must be taken to assure that the individual understands that, when there is such adversity of interest, the lawyer for the organization cannot provide representation for that constituent individual, and that the discussions between the lawyer for the organization and the individual may not be privileged.

Disclosure is required not just when an actual conflict exists between the interests of the corporation and those of the employee (for example, when the corporation has already confided to the lawyer that it will concede wrong-doing by the employee but will attempt to avoid corporate responsibility for any illegality). Disclosure is also required when there "may be" an adversity between the interests of corporation and employee. There "may be" an adversity when the corporation has not yet irretrievably committed itself to a position in the matter, but where one such position might be adverse to the employee. Such a possible adversity would almost always arise, then, when the corporation is able to take a position adverse to the employee.

On the other hand, Rule 1.13(b) applies only when the possible conflict is "apparent," which we interpret to mean actually apparent to the lawyer or apparent to a reasonable lawyer under the circumstances.[4] As so interpreted, the obligation of disclosure would not arise in those situations where the lawyer had no reason to believe that there was any possibility of adversity between corporation and employee when the interview was conducted.[5]

**Confidentiality**

As Comment [3] to Rule 1.13 notes, communications between the lawyer and the person being interviewed are protected by Rule 1.6 (Confidentiality of Information), but the protection accorded is for the benefit of the client corporation, not the interviewee.[6] See also Upjohn Co. v. United States, 449 U.S. 383 (1981). Thus, the interviewee has no right to expect that disclosure or use of the information provided by him or her to the lawyer will be subject to his/her control under Rule 1.6, as the corporation will have the right to use the information to serve its purposes. In this regard, it makes no difference whether the interviewee is an employee performing routine services, or a corporate director or officer entrusted with more significant responsibilities. Both are persons with interests potentially separate from those of the corporation.

Notwithstanding the law on this subject, a corporate interviewee might reasonably conclude that the information she provides to the investigating lawyer will be treated as confidential by the lawyer, perhaps because she mistakenly believes that the lawyer is representing her also. This, then, is another situation in which Rules 4.3(b) and 1.13(b) may require the lawyer to clarify his role and the status of the information to be provided by the interviewee.

**Representation of Constituents**

A further question presented in the inquiry concerns the obligations of a lawyer who is retained by a corporation to represent one of its constituents, such as a corporate officer, director or employee. Such retentions, under which the corporation is typically responsible for the lawyer's fees, are not unusual when the representation concerns a matter arising from

the constituent's work for the corporation. One aspect of the ethical concerns in such an arrangement is addressed in Rule 1.8(e), which permits a lawyer to accept compensation from someone other than the client (which, in this case, is the corporate employer of his client), but only where the client consents to the arrangement, where the arrangement does not interfere either with the exercise of the lawyer's professional judgment on behalf of his client or with the attorney-client relationship, and where client confidences are protected.

Where such representation is of the constituent alone, that person is the lawyer's sole client, just as the lawyer representing the corporation has that entity as his sole client. The lawyer has no attorney-client relationship with the person paying the lawyer's fees, and the lawyer must take care that his activities on behalf of his client are not influenced by that person. *Id.* And as regards attorney-client confidentiality, that obligation is owed to the constituent-client only, and not to the person paying the lawyer's fees. *Id.*

The lawyer retained by the corporation to represent the employee also may have a conflict of interest concern under Rule 1.7(b)(4), which applies when the lawyer's work on behalf of a client will or reasonably may be affected, not by obligations to another client, but by the lawyer's financial or personal interests. Such interests could include continuing referral or unrelated other work for the corporation, which could be influenced by the manner in which the lawyer represents the employee. For example, it is not unthinkable that a lawyer who is regularly paid by a stock brokerage to represent its brokers individually may have a financial disincentive to represent a broker in a manner which implicates the brokerage in wrong-doing. Where a situation like that will or may arise, the lawyer could represent the individual client only with the client's informed consent to this potential conflict of interest.[7]

**Multiple Representation**

Finally, where the lawyer is asked to represent in the same matter a constituent and the corporation, or two constituents, the same types of conflicts may arise as in any other situation where a lawyer (or law firm) represents more than one party in the same matter.[8] Where the potential clients are directly adverse (or become directly adverse after commencement of the dual representation), the dual representation is absolutely prohibited under Rule 1.7(a). But even where the parties are nominally aligned together, there may be a risk that the representation of one will adversely affect the representation of the other. For example, one client may wish to settle a matter in litigation, while the other may not and might perceive his/her litigation position to be prejudiced by a settlement by the other client. In such a situation, the clients represented by the same lawyer are not advancing interests adverse to one another so as to invoke the unqualified prohibition of dual representation under Rule 1.7, but Rules 1.7(b)(2) and (3) are clearly implicated in such a situation, since one client's interests cannot be zealously pursued without likely adverse effect on the interests of the other client. Such dual representation could only be accomplished, then, with the consent of both clients, "after full disclosure of the existence and nature of the possible conflict and the possible adverse consequences of such representation. . . ." Rule 1.7(c). The nature and content of the disclosure will obviously be determined by the facts and circumstances of the matter and the lawyer's representation of the potentially adverse clients. Among the subjects of disclosure that may be unique to a lawyer's representation of a corporation and an employee, or two employees of the same corporation, are the lawyer's pre-existing relationship with the two clients, whether one of the clients is an expected source of additional, unrelated legal work for the lawyer, and who will be paying the

lawyer's fees (if not the client).

The disclosure should also address the fact and consequences of a possible disqualification of the lawyer from further representation of the client in the event the dually-represented clients later plan to take positions actually adverse to each other in the same matter. One of those consequences could be the inconvenience, expense and possible legal risk associated with the need for the client to retain new counsel.

It would not be impermissible for the lawyer in such a dual representation to seek the consent of one of the clients to continue representation of the other client in the event of an actual adversity under Rule 1.7(a) that requires termination of the dual representation. But such consent must be based on disclosure of the consequences to that client of granting such consent, and disclosure to the client for whom the representation would continue of any limitations on that continued representation. Perhaps the most significant area to be addressed in disclosures to both clients is how the lawyer's confidentiality obligation to the client to be terminated will be protected, and how the representation of the continuing client will be affected by the lawyer's continuing confidentiality obligation to the terminated client. In circumstances where the dual representation cannot be continued, Rule 1.9 (Conflict of Interest: Former Client) may prevent the lawyer from continuing to represent either client unless one of the clients has granted this particular consent.

On the other hand, there may be many dual representations where the interests of the two parties have no reasonable likelihood of becoming adverse, in which case Rules 1.7(b)(2) and (3) would not be applicable, and client consent would not be needed. But the existence of the Rule 1.7(b) criteria may not always be apparent or readily determinable at the outset of a representation, and a lawyer should be careful not to resolve unilaterally close conflict questions against the interests of clients or prospective clients. Comment [7] to Rule 1.7 describes the situation as follows:

> The underlying premise [of Rule 1.7(b)] is that disclosure and consent are required before assuming a representation if there is any reason to doubt the lawyer's ability to provide wholehearted and zealous representation or if a client might reasonably consider the representation of its interests to be adversely affected by the lawyer's assumption of the other representation in question. Although the lawyer must be satisfied that the representation can be wholeheartedly and zealously undertaken, if an objective observer would have any reasonable doubt on that issue, the client has a right to disclosure of all relevant considerations and the opportunity to be the judge of its own interests.

Thus, in judging whether one representation is "likely" to affect adversely another representation, the lawyer must look at the proposed dual representation from both an objective perspective and from the perspective of the potentially affected client's reasonable expectation of loyalty. Each case will, obviously, turn on the particular facts and circumstances presented.

Inquiry No. 96-2-3
Adopted: January 15, 1997

1. District of Columbia Rule 1.13 reads as follows:

    (a) A lawyer employed or retained by an

Case 1:06-cv-01343-CKK   Document 49-4   Filed 01/02/2008   Page 19 of 20

>   organization represents the organization acting through its duly authorized constituents.
>   (b) In dealing with an organization's directors, officers, employees, members, shareholders, or other constituents, a lawyer shall explain the identity of the client when it is apparent that the organization's interests may be adverse to those of the constituents with whom the lawyer is dealing.
>   (c) A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders, or other constituents, subject to the provisions of Rule 1.7. If the organization's consent to the dual representation is required by Rule 1.7, the consent shall be given by an appropriate official of the organization other than the individual who is to be represented, or by the shareholders.

2. Such constituents may, however, hire counsel to represent *their* interests in matters concerning the corporation. A plant manager, for example, may obtain personal representation during an investigation of possible illegal waste disposal at a facility under his supervision.
    In the event of any ambiguity concerning whether the lawyer is being hired by the constituent to represent the corporation or constituent, the lawyer should clarify the client's identity at the outset of his dealings with the constituent, as any uncertainty is likely to be resolved in favor of a reasonable expectation of the constituent that an attorney-client relationship has been established with it. Cf. *Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311 (7th Cir. 1978).
    A representation of the corporation does not preclude representation of a constituent, and vice versa, even in the same matter. See Rule 1.13(c). Such additional representation, discussed later in this Opinion, would be governed by the conflicts provisions of the Rules of Professional Conduct, including Rules 1.7 and 1.9.
3. That disclosure obligation derives, in part, from Rule 4.3, concerning a lawyer's obligations when dealing with unrepresented persons generally. Under that Rule, a lawyer representing a client shall not give advice to an unrepresented person (other than advice to secure counsel) where the interests of that person may be in conflict with the interests of the lawyer's client, and shall not, even with respect to a person whose interests are not in conflict with those of the lawyer's client, leave the impression that the lawyer is disinterested. Thus, even apart from any special circumstances that might exist when a lawyer for a corporation interviews a corporate employee, Rule 4.3(b) requires the investigating lawyer to clarify his position "[w]hen the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter. . . ."
4. Limiting the disclosure obligation of Rule 1.13(b) to situations where the possible conflict was actually apparent to the lawyer would frustrate the protective purpose of the Rule by allowing a lawyer to be willfully blind to certain circumstances to avoid their "appearance" to him.
5. The only Rule 1.13 Comment relevant to the obligation to make a disclosure to corporate constituents is [9],

which is not particularly helpful: "Whether such a warning should be given by the lawyer for the organization to any constituent individual may turn on the facts of each case."

6. Where the lawyer, through act or omission, reasonably leaves the constituent with the impression that there is an attorney-client relationship between them, the constituent's communications will be given protection under Rule 1.6. That was the situation in *Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311 (7th Cir. 1978), where the lawyers for a trade association gave some individual members of a trade association the impression that they were also representing them when collecting information from the members. When a matter later arose for another client in which the information collected from the members might be used against them, the law firm was required to withdraw from representation because of its conflicting confidentiality obligations to the members.

7. Conflict of interest issues are similarly raised when representation of the corporate constituent is being provided by an in-house lawyer. The in-house lawyer, like outside counsel, has a concern under Rule 1.7(b)(4), in this case whether his representation of the corporate constituent will or reasonably may be affected by his personal employment interests with the corporation. He also has a multiple-client concern under Rules 1.7(b)(2) and (3), because of his continuing service as counsel to the corporation. *See* discussion herein under "Multiple Representation."

8. Rule 1.13(c) specifically authorized the representation of a corporation and one or more constituents, subject to satisfaction of the requirements of Rule 1.7, concerning conflicts of interest generally.




The District of Columbia Bar | 1250 H Street NW, sixth floor | Washington DC 20005-5937 | 202-737-4700 | Directions/Parking
©2007 District of Columbia Bar. All rights reserved. Privacy Policy | Disclaimer | Author guidelines