## APPENDIX

*Archer v. State of Texas*, 548 S. W.2d 71, 74 (Texas Civ. App. 1977).

Westlaw.

548 S.W.2d 71                                                                                                   Page 1
548 S.W.2d 71, 94 A.L.R.3d 837
**(Cite as: 548 S.W.2d 71)**

H
Archer v. State,
Tex.Civ.App. 1977.

Court of Civil Appeals of Texas, El Paso.
A. R. ARCHER, Jr., Appellant,
v.
The STATE of Texas, Appellee.
**No. 6510.**

Feb. 9, 1977.
Rehearing Denied March 9, 1977.

In disciplinary case, the District Court, Ward County, Earl W. Smith, J., entered judgment suspending defendant from the practice of law for two years, and defendant appealed. The Court of Civil Appeals, Preslar, C. J., held, inter alia, that actions need not be fraudulent, culpable or wilful in order to violate disciplinary rule relating to preserving identity of funds and property of a client; that there is no provision in the Code of Professional Responsibility for client's consent to commingling of funds; and that attempt to have client sign an affidavit which would have been false would constitute grounds for disciplinary action regardless of whether such is an offense under the Penal Code, and whether defendant knew that affidavit would have been false is in effect an excuse issue.

Affirmed.

West Headnotes

**[1] Attorney and Client 45 €⇒44(2)**

45 Attorney and Client
    45I The Office of Attorney
        45I(C) Discipline
            45k37 Grounds for Discipline
                45k44 Misconduct as to Client
                    45k44(2) k. Misappropriation and Failure to Account. Most Cited Cases
Actions need not be fraudulent, culpable or wilful in order to violate disciplinary rule relating to preserving identity of funds and property of a client. State Bar Rules, art. 12, § 8, DR 9-102, Vernon's Ann.Civ.St. following art. 320c.

**[2] Attorney and Client 45 €⇒44(2)**

45 Attorney and Client
    45I The Office of Attorney
        45I(C) Discipline
            45k37 Grounds for Discipline
                45k44 Misconduct as to Client
                    45k44(2) k. Misappropriation and Failure to Account. Most Cited Cases
Consent by clients could not remove attorney from the requirements of the Code of Professional Responsibility with respect to commingling of clients' and attorney's funds. State Bar Rules, art. 12, § 8, DR 9-102, Vernon's Ann.Civ.St. following art. 320c.

**[3] Attorney and Client 45 €⇒44(2)**

45 Attorney and Client
    45I The Office of Attorney
        45I(C) Discipline
            45k37 Grounds for Discipline
                45k44 Misconduct as to Client
                    45k44(2) k. Misappropriation and Failure to Account. Most Cited Cases
Attorney is not liable for an error in judgment if he acts in good faith and in honest belief that his advice and his acts are well founded and in the best interests of his client, but commingling of client's funds is not in the ambit of advice, reaching a legal conclusion, or making a judgment call.

**[4] Attorney and Client 45 €⇒44(2)**

45 Attorney and Client
    45I The Office of Attorney
        45I(C) Discipline
            45k37 Grounds for Discipline
                45k44 Misconduct as to Client
                    45k44(2) k. Misappropriation and Failure to Account. Most Cited Cases
Disciplinary rule with respect to preserving identity of funds and property of client is not unconstitu-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

548 S.W.2d 71                                                                                       Page 2
548 S.W.2d 71, 94 A.L.R.3d 837
**(Cite as: 548 S.W.2d 71)**

tional for being vague and indefinite. State Bar Rules, art. 12, § 8, DR 9-102, Vernon's Ann.Civ.St. following art. 320c.

**[5] Attorney and Client 45 €—48**

45 Attorney and Client
    45I The Office of Attorney
        45I(C) Discipline
            45k47 Proceedings
                45k48 k. Notice and Preliminary Proceedings. Most Cited Cases
Defendant in disciplinary proceeding was in no position to complain of discovery allowed by the court where the same was done by agreement in open exchange between counsel and judge at pretrial hearings.

**[6] Pleading 302 €—376**

302 Pleading
    302XVII Issues, Proof, and Variance
        302k373 Matters to Be Proved
            302k376 k. Admissions in General. Most Cited Cases
Party need not allege or prove facts that are pleaded and admitted by its adversary.

**[7] Appeal and Error 30 €—1078(1)**

30 Appeal and Error
    30XVI Review
        30XVI(K) Error Waived in Appellate Court
            30k1078 Failure to Urge Objections
                30k1078(1) k. In General. Most Cited Cases
As discovery and admissibility are two different things, points of error relating to admissibility which were not briefed were waived despite complaints as to the discovery of the same material.

**[8] Attorney and Client 45 €—54**

45 Attorney and Client
    45I The Office of Attorney
        45I(C) Discipline
            45k47 Proceedings
                45k54 k. Trial or Hearing. Most Cited Cases
It was not an abuse of discretion to refuse a continuance in disciplinary proceeding, where trial date had been arrived at at pretrial conference and deadlines were met and allowed ample time for preparation. State Bar Rules, art. 12, § 26, Vernon's Ann.Civ.St. following art. 320c.

**[9] Attorney and Client 45 €—41**

45 Attorney and Client
    45I The Office of Attorney
        45I(C) Discipline
            45k37 Grounds for Discipline
                45k41 k. Falsification or Abstraction of Records or Papers. Most Cited Cases
Attempting to have client sign an affidavit which would have been false would constitute professional misconduct, regardless of whether such action is an offense under the Penal Code, and knowledge of falsity is in effect merely an excuse issue. State Bar Rules, art. 12, § 8, DR 1-102(A)(3-5), Vernon's Ann.Civ.St. following art. 320c.

**[10] Appeal and Error 30 €—930(3)**

30 Appeal and Error
    30XVI Review
        30XVI(G) Presumptions
            30k930 Verdict
                30k930(3) k. Interrogatories and Special Verdicts. Most Cited Cases

**Appeal and Error 30 €—989**

30 Appeal and Error
    30XVI Review
        30XVI(I) Questions of Fact, Verdicts, and Findings
            30XVI(I)1 In General
                30k988 Extent of Review
                    30k989 k. In General. Most Cited Cases
In deciding a no evidence point, appellate court must consider only the evidence and inferences tending to support the finding and disregard all evidence and inferences to the contrary, while in deciding an insufficient evidence point, appellate

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

548 S.W.2d 71  
548 S.W.2d 71, 94 A.L.R.3d 837  
**(Cite as: 548 S.W.2d 71)**

Page 3

court is required to consider all of the evidence.

**[11] Attorney and Client 45 ⇐38**

45 Attorney and Client  
   45I The Office of Attorney  
      45I(C) Discipline  
         45k37 Grounds for Discipline  
            45k38 k. Character and Conduct. Most Cited Cases  
Professional misconduct results from a violation of the Code of Professional Responsibility even though such violation may not be a violation of the Penal Code.

**[12] Jury 230 ⇐34(1)**

230 Jury  
   230II Right to Trial by Jury  
      230k30 Denial or Infringement of Right  
         230k34 Restriction or Invasion of Functions of Jury  
            230k34(1) k. In General. Most Cited Cases  
Court's act of disregarding jury's answer to special issue in disciplinary proceeding did not violate defendant attorney's right to trial by jury.

**[13] Attorney and Client 45 ⇐59.13(4)**

45 Attorney and Client  
   45I The Office of Attorney  
      45I(C) Discipline  
         45k59.1 Punishment; Disposition  
            45k59.13 Suspension  
               45k59.13(2) Definite Suspension  
                   45k59.13(4) k. Mishandling of Trust Account or Client Funds. Most Cited Cases  
   (Formerly 45k58)  
Deposit of clients' funds in bank account used for general business and affairs and attempting to get client to sign a false affidavit would warrant suspension for two years. State Bar Rules, art. 12, § 8 DR 1-102(A)(3-5), DR 9-102, Vernon's Ann.Civ.St. following art. 320c.

*72 Max E. Ramsey, Odessa, Mitchell, George & Belt, Arthur Mitchell, Austin, for appellant.

Davis Grant, Austin, Roddy L. Harrison, Pecos, for appellee.

OPINION

PRESLAR, Chief Justice.

   This is a disciplinary case against an attorney for violation of the Code of Professional Responsibility which governs attorneys at law in the State of Texas. Trial was to a jury which found against the attorney on some issues and exonerated him on others. Based on the jury verdict and after disregarding one issue thereof, the Court entered judgment suspending the attorney from the practice of law for two years. We affirm that judgment.

   This action was instituted by the Grievance Committee for the State Bar, District 17-B, in the name of the State of Texas as Plaintiffs against A. R. Archer, Jr., of Monahans, Texas, Defendant. The jury found that the Defendant was not guilty of converting his clients' funds, but it did find against him on two other matters. The jury found that the attorney deposited his clients' funds in a bank account which he used for general business and affairs, as to which the Court found that the Defendant had violated Disciplinary Rule 9-102 of the *73 Code of Professional Responsibility. It was also the verdict of the jury that the Defendant had attempted to get a client to sign a false affidavit, and the Court held that that amounted to professional misconduct under Disciplinary Rule 1-102(A)(3), (4), and (5). The Court found that either of the above violations would warrant the judgment of suspension for two years.

   The Defendant represented Marcella Martinez, Pedro Lopez, Guillermo Fierro, Charles Blount, Jose Herrera, H. B. Banks, and Joe T. Urias in separate workmen's compensation cases. In each of these cases, when the Defendant procured a judgment or settlement, he deposited the settlement check in a bank account "A. R. Archer, Jr., Attorney" or "A. R. Archer, Attorney at Law" account. He testified that neither of these accounts were trust or escrow accounts, and the evidence shows that the Defendant withdrew funds at will from these ac-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

548 S.W.2d 71                                                                              Page 4
548 S.W.2d 71, 94 A.L.R.3d 837
**(Cite as: 548 S.W.2d 71)**

counts for a variety of personal and business purposes. When the Defendant received the settlement checks, he prepared a "settlement of account" statement. This statement set out the amount of recovery, the legal expenses which were due and owing the Defendant, the medical and other expenses which the Defendant was authorized to pay or had paid, and the net proceeds to the client. This case arose when a doctor complained to the Grievance Committee that money withheld under the settlements for his fee had not been paid to him.

By Special Issue No. 1, the jury was asked to make a two-part finding. First, they found that as to each of the seven clients the Defendant "did deposit" insurance settlement checks in an account used by the Defendant for "general business and affairs." By the second part of such issue, they found that such depositing "was" intentional. By Special Issue No. 1(a), the jury found that each client "did consent" to such depositing. The trial Court disregarded Special Issue No. 1(a) on the basis that as a matter of law, the finding was immaterial and there was no evidence to the consent of commingling.

[1] Appellant asserts that his actions must have been fraudulent, culpable, or wilful in order to be violative of DR 9-102. DR 9-102, as it now stands, provides:

"DR 9-102. Preserving Identity of Funds and Property of a Client.

"(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

"(1) Funds reasonably sufficient to pay bank charges may be deposited therein.

"(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved."

Tex.Rev.Civ.Stat.Ann., art. 320a-1, App., art. 12, Sec. 8, Canon 9, DR 9-102 (1973).

At one time, the rule did require "wilful violation," but as can be seen, there is no such requirement here. Thus, no finding of fraudulent, culpable, or wilful conduct is required. There is no question of the sufficiency of the evidence that the funds were in fact commingled, or, for that matter, that the Defendant used the funds so deposited for his personal affairs and business. For example, he deposited the settlement check in the case of Marcella Martinez in the amount of $13,750.00, and thirteen days later, the balance of his account was some $4.60, with the money having been spent on a variety of personal and business items while items listed on the "settlement sheet" remained unpaid.

[2][3] Error is urged in the Court's act in disregarding Special Issue No. 1(a) regarding the consent given by the clients. The *74 evidence is that, as to each settlement sheet, there were certain items withheld by which the attorney represented that he had either paid or would pay medical and hospital bills and other items enumerated on the settlement sheet. The proof was that many of these items were never in fact paid, and, in some instances, the clients continued to get bills for them. Some of the items remained unpaid at the time of trial, although the Defendant tendered some $5,000.00 of such funds into Court after trial but prior to his sentencing. The evidence is undisputed that the clients did not consent to the use of their money for anything other than the payment of the specified expenses for which the sums were withheld. Consent is really very similar to the previously discussed issues of wilfulness and culpability in that there is no provision for consent in DR 9-102. The clients consented to deposit, but not to commingling. The attorney is subject to the Code of Professional Responsibility, in this instance DR 9-102, and the clients did not and could not remove him from the responsibility of the Code. A violation of the Code amounts to professional misconduct, and there is no provision for consent in DR 9-102 to change that. The same is

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

true of the argument for an issue on good faith. The evidence here did not raise a good faith issue. An attorney is not liable for an error in judgment if he acts in good faith and in an honest belief that his advice and his acts are well founded and in the best interest of his client.Cook v. Irion, 409 S.W.2d 475 (Tex.Civ.App., San Antonio 1966, no writ).

" * * * The good faith defense should apply only in those situations where the attorney exercises his best judgment believing that his decision is in the best interest of his client. * * * "

State v. Baker, 539 S.W.2d 367, 375 (Tex.Civ.App., Austin 1976, writ ref'd n. r. e.). The acts involved here are not in the ambit of advice to a client, or reaching a legal conclusion, or making a judgment call.

[4] DR 9-102 recognizes that an attorney will be entrusted with the clients' moneys in the course of handling his affairs. It guards against the dangers of commingling; the probability in some cases, the possibility in many cases, and the danger in all cases that such commingling will result in loss of the clients' funds. It is not unconstitutional for being vague and indefinite. It calls for a reasonable manner of handling the clients' funds; it is a simple directive as to the manner of handling, rather than a misappropriation, which is another matter; it avoids the appearance of impropriety, and assures that there will be no loss of the clients' funds despite "good intentions." To comply with it, all that is required is good office management.

The Appellant has numerous points of error relating to discovery and admissibility of certain of his bank records. Some of these points of error, and much of the argument, go to an order granting discovery, dated June 30, 1975. There is in the record an order of the Court rescinding that order of June 30, 1975, so that any points of error or argument as to it are without merit.

[5][6][7] We are of the opinion that the Defendant is in no position to complain of the discovery allowed by the Court, as same was done by agreement of all parties and the Court. The agreement is not reduced to writing, but occurred in an open exchange between counsel and the judge at two pre-trial hearings, one on July 16, 1975, and the other on July 9, 1975. There is no transcript of the July 16th hearing, but there is a full transcript of the July 9th pre-trial hearing, and it is clear from that record that the parties agreed. The nearest thing to a summary of the agreement is where the Court said at the second pre-trial hearing:

"THE COURT: That's the reason by agreement we had this thing done, Mr. Ramsey; it was agreed that the deposit slips made on each of these matters would be submitted to the court, and the checks written on that bank account into which the deposits were made for checks written for thirty days would be submitted to the Court, and the Court would determine the relevancy of these matters submitted to the Court."

*75 There can be no doubt that the Defendant agreed to the discovery of the bank records. They were furnished to the Court for in camera inspection. The Court did inspect them and found that they were admissible. Discovery and admissibility are two different things, and discovery was done by agreement here. The fact of the agreement for discovery is also set out in some of Defendant's pleadings. For instance, his motion for protective orders, dated July 29, 1975, recites that at the pre-trial conference of July 16, 1975, Defendant agreed to furnish for in camera inspection all withdrawals for thirty days after each settlement check had been deposited, and it recited that he was sending such checks to the Court under separate cover. Other pleadings of the Defendant refer to the agreement. As said in Phagan v. State :" ' ". . . a party need not allege or prove facts that are pleaded and admitted by his adversary . . ." ' "

510 S.W.2d 655, 661 (Tex.Civ.App., Fort Worth 1974, writ ref'd n. r. e.). However, the Defendant did decide to test the discovery matter and took it to the Supreme Court, which Court denied mandamus. Timewise, it was agreed that the bank records which the Court had in its possession for in camera inspection would be delivered to counsel for Plaintiff on August 20, 1975, if by that time the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

548 S.W.2d 71  
548 S.W.2d 71, 94 A.L.R.3d 837  
**(Cite as: 548 S.W.2d 71)**

Page 6

Defendant had no relief from the Supreme Court on its mandamus action. As noted earlier, discovery and admissibility are two different things. The points of error relating to admissibility are not briefed in this Court and are therefore waived.

[8] Appellant assigns error in the Court's failing to grant its first formal motion for continuance. We overrule this contention on the basis that it was not an abuse of discretion on the part of the trial Court to refuse a continuance. Appellant readily concedes that the granting or withholding of a continuance is a matter addressed to the discretion of the trial Court. The trial date of September 2nd was arrived at at the pre-trial conference of July 9, 1975. The case had previously been set for August 18th, and Defendant sought additional time in order to seek the mandamus in the Supreme Court. The trial Court denied any additional time for that reason, but did call on the parties to agree as to the date of trial. In an exchange between Court and counsel, the date of September 2nd was then arrived at; in view of the fact that the Grievance Committee was having another meeting on August 13th, the trial Court granted the Defendant's motions requiring the Committee to include in any amended pleadings all known complaints and limiting such pleadings to only those complaints known then to the Grievance Committee. It was determined at that time when the Plaintiff's amended pleadings would be filed and the date which the Defendant would respond to them. Those deadlines were met and it allowed ample time for preparation. It should be noted that Section 26 of the Code of Professional Responsibility permits amendment by permission of the Court at any time prior to conclusion of the trial. We conclude that there was no abuse of discretion in denying the motion for continuance.

[9][10] Special Issue No. 4 inquired:

"Do you find from a preponderance of the evidence that on or about February 17, 1975, A. R. Archer, Jr. attempted to have Marcella Martinez sign an affidavit which included the following statement:

" 'And, therefore, I would not let Mr. Archer withhold any of the hospital and medical expenses of Dr. Mario Palafox from the settlement, and these funds in the amount of $1,464.55 were not deducted from my settlement.' "

To which the jury answered "He did." The jury then answered by Special Issue No. 5 that the affidavit containing that statement would have been false if signed, and by Special Issue No. 6, found that he knew the affidavit would have been false. Appellant attacks the finding of Special Issue No. 6 on the basis that there was no evidence, or in the alternative insufficient evidence, to support the jury's finding. We view the issue as being unnecessary to support the Court's judgment of professional misconduct; that *76 is supported by Special Issues Nos. 4 and 5 in that he did attempt to have Marcella Martinez sign an affidavit which would have been false. In the case of Smith v. State, 523 S.W.2d 1 (Tex.Civ.App., Corpus Christi 1975, writ ref'd n. r. e.), it was held that an attorney's advice to a client that he should misstate a particular fact constitutes professional misconduct, and is grounds for disciplinary action, regardless of whether such action is an offense under the Penal Code. Special Issue No. 6 is immaterial as noted because 4 and 5 set up the offense, and 6 is in effect an excuse issue; by it, the Defendant in effect is saying even though it happened, I am excused for the reason that I didn't know it. In any event, we overrule the points of error that there is no evidence or insufficient evidence to support the finding to Special Issue No. 6. In reaching those decisions, we have used the familiar rules that in deciding a no evidence point, an appellate Court must consider only the evidence and the inferences tending to support the finding, and disregard all evidence and inferences to the contrary.Garza v. Alviar, 395 S.W.2d 821 (Tex.1965). In deciding an insufficient evidence point, the appellate Court is required to consider all of the evidence.In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

[11] Appellant assigns error that the Court, in its judgment, characterized the conduct of the Defendant as being one of "attempted perjury." We see no error in this, in that the Court's judgment specifically says: "Such Judgment of suspension

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

548 S.W.2d 71 548 S.W.2d 71, 94 A.L.R.3d 837 **(Cite as: 548 S.W.2d 71)**

Page 7

from practice is based upon the jury's verdict to Special Issue No. 1 and its answers to Special Issues No. 4, 5 and 6." In this connection, it is the Appellant's argument that "attempted perjury" is not a crime under the new criminal code. As already noted, the conduct found by the jury is professional misconduct, and the Code provides that professional misconduct results from a violation, though such violation may not be a violation of the Penal Code. This is also the holding in State v. Baker, supra, and Galindo v. State, 535 S.W.2d 923 (Tex.Civ.App., Corpus Christi 1976, no writ). It was there held that Grievance Committee proceedings are not governed by the criminal standards.

[12] Appellant contends that the Court's act of disregarding the jury's answer to Special Issue No. 1(a) violated his right of trial by jury as provided in the Code. The provision of the Code is that the accused attorney shall have the right of a trial by jury in the county of his residence. It cannot be given the construction that Appellant places on it, for the Code also says that the Rules of Civil Procedure shall govern, and, under those rules, the Court can disregard an issue. Appellant's contention has been decided otherwise in the case of State v. Baker, supra. It was there held that the trial Court erred in not granting the State's motion for judgment non obstante veredicto.

[13] All points of error have been considered, and all are overruled. The judgment of the trial Court is affirmed.

Tex.Civ.App. 1977.
Archer v. State
548 S.W.2d 71, 94 A.L.R.3d 837

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.