UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BERLINER, CORCORAN & ROWE, L.L.P., | ) | |
|  | ) | |
| *Plaintiff,* | ) | |
|  | ) | |
| v. | ) | |
|  | ) | |
| MORDECHAI ORIAN, et al., | ) | Case No. 1:06-CV-01543 (CKK) |
|  | ) | |
| *Global.* | ) | |

## GLOBAL'S FIRST AMENDED COUNTERCLAIMS AND JURY DEMAND

### COUNTERCLAIMS AND JURY DEMAND

Global Mordechai Orian ("Mr. Orian") and Global Horizons, Inc. ("Global Horizons") (collectively, "Global"), through their undersigned counsel, hereby submit this amended counterclaim and jury demand as follows:

### GENERAL ALLEGATIONS

Defendant Mordechai Orian ("Mr. Orian") and Global Horizons, Inc. ("Global Horizons") (collectively, "Global"), through their undersigned counsel and based on information and belief, hereby allege:

1.   Global Horizons is in the business of hiring foreign workers to perform essential agricultural services for U.S. employers who need temporary and immediate workers.

2.   In or about 2005, the United States Department of Labor ("DOL") filed an administrative proceeding against Global Horizons and Mr. Orian alleging that Global had

1

violated certain labor laws in its hiring and/or transfer of certain employees (the "DOL Proceeding"). The Department of Labor sought monetary and civil penalties for the alleged violations, which included a penalty that impaired Global Horizons' ability to continue operating its business in this field.

3. Global retained a law firm to represent them in the DOL Proceeding. After some months, Global and the law firm amicably decided that the former lawyers would withdraw from representing Global in the DOL Proceeding. One of the individuals involved in that case recommend that Global consider retaining the services of his friend Thomas Wilson ("Mr. Wilson"), an "Of Counsel" attorney at Plaintiff Berliner Corcoran & Rowe LLP ("BCR") in Washington D.C.

4. Shortly thereafter, Mr. Wilson contacted Mr. Orian and invited him to meet Mr. Wilson in Washington, DC.

5. On or about April 15, 2005, Mr. Orian met with Mr. Wilson at Mr. Wilson's office in Washington, D.C. Mr. Wilson asked Mr. Orian how much he had been paying on a monthly basis for legal representation in the DOL Proceeding. Mr. Orian stated that Global Horizons had been paying between $15,000 to $20,000 each month for a legal defense in the DOL Proceeding, and that Global Horizons could afford to continue paying that amount.

6. In response, Mr. Wilson stated that he would represent Global in the DOL Proceeding for an amount that would not exceed $15,000 to $20,000 each month, and that the total cost of Mr. Wilson's services in bringing the case to a resolution would not exceed $200,000 to $250,000.

7. Mr. Orian and Mr. Wilson did not discuss at any time whether Mr. Orian would

accept personal responsibility for the costs of legal fees and/or expenses. Mr. Orian has never agreed to accept personal responsibility for the costs of legal fees and/or expenses.

8. On or about April 15, 2005, Global Horizons made a first payment to BCR of $5,000.

9. In November 2005, Mr. Wilson sent Global Horizons a letter purporting to set forth the terms of Mr. Wilson's engagement. Mr. Orian countersigned the letter on or about November 18, 2005. A copy of that letter is attached to the Complaint as Exhibit 1.

10. The letter states that BCR required a retainer of $20,000 each month. Global reasonably believed that the retainer amount reflected the maximum monthly rate that Mr. Orian had agreed that Global Horizons would pay. The letter states that the retainer must be replenished monthly, and that "[i]f any portion of the retainer amount remains unexpended at the end of our work, we will return the balance promptly." The letter does not state that Global Horizons would be expected to pay more than $20,000 each month.

11. Global Horizons paid BCR the additional amount of $15,000 that was requested in the letter to provide a monthly total retainer amount of $20,000.

12. Mr. Orian never entered into any personal agreement with Plaintiff. The only agreement that Mr. Orian made was on behalf of Global Horizons.

13. Global Horizons received the first bill from Plaintiff in or about December 2005. Mr. Orian was shocked that the amount of the bill exceeded the $20,000 cap that he had discussed and agreed to with Mr. Wilson.

14. Mr. Orian immediately contacted Mr. Wilson and expressed his concern over the

excessive monthly bill. Mr. Wilson directed Mr. Orian to make a partial payment and assured him that the rest would be worked out later.

15. As the fees continued to increase over the next couple of months, Mr. Orian continued to object to the amount. Mr. Orian identified matters listed on the bills that he believed were excessive and informed Mr. Wilson of Global Horizon's unwillingness to pay. Mr. Wilson again directed Mr. Orian to continue to make partial payments and made assurances that the matter would be worked out at a later time.

16. Ultimately, Plaintiff issued bills to Global Horizons that exceeded $300,000.

17. During the course of his representation, Mr. Wilson failed to display reasonably competent lawyering skills.

18. When Mr. Orian first retained BCR, he asked Mr. Wilson to seek the dismissal of Mr. Orian in his personal capacity from the DOL Proceeding. Mr. Wilson assured Mr. Orian that he would do so.

19. Mr. Wilson never sought the dismissal of Mr. Orian in his personal capacity and never informed Mr. Orian of the reason for his inaction.

20. The factual and legal background of the DOL Proceeding was complex. Nonetheless, at hearings client meetings, and a settlement conference, Mr. Wilson appeared unprepared and lacking a basic understanding of the facts of the case.

21. Mr. Wilson never pursued a strong legal defense that Mr. Orian urged him to pursue from the beginning of the case. The Department of Labor accused Global of engaging in conduct that violated certain labor laws. Mr. Orian explained to Mr. Wilson that the alleged

conduct was done in compliance with a specific federal statute.  Mr. Wilson did not pursue this legal defense and did not advise Mr. Orian why he failed to do so.

22.  Mr. Wilson did not reasonably defend Global against the discovery requests propounded by the DOL.  Mr. Wilson failed to timely respond to the DOL's discovery requests, in one instance causing the DOL to treat the responses as deficient.  Mr. Wilson failed to object to the DOL's discovery requests, many of which were clearly overbroad, vague, or seeking extraneous or intrusive information.  Mr. Wilson failed to seek available meet-and-confer meetings with the DOL or otherwise attempt to seek narrowing of the DOL's discovery requests. Mr. Wilson failed to seek protective orders with respect to unnecessarily intrusive or overbroad discovery requests.  Mr. Wilson failed to demand that the Department of Labor account for missing documents in the discovery it produced and/or provide a privilege log.

23.  Mr. Wilson did not reasonably conduct offensive discovery.  Mr. Wilson served minimal, or did not serve any, discovery requests on the DOL.  Mr. Wilson did not serve discovery requests seeking information that would be useful to Global's case.  Mr. Wilson did not depose any individuals.

24.  Plaintiff charged excessive fees for its services, including for travel time of Mr. Wilson, exaggerated time spent in meetings and conversations with other lawyers who reported spending less time in such meetings and conversations, and services that Mr. Wilson failed to provide in a reasonably competent manner.

25.  In the spring of 2006,- Global and the DOL engaged in settlement discussions.

26.  Mr. Wilson did not provide reasonably competent counsel to Global with respect to these discussions. For example, at a settlement conference between Global and the DOL, Mr.

Wilson did not appear to have a basic understanding of the facts. The DOL representative remarked that it appeared that only he (the representative) and Mr. Orian understood the case. Moreover, because Mr. Wilson had not pursued discovery of information that would have helped establish Global's defense, he did not pursue a reasonably competent settlement strategy and did not negotiate a settlement agreement in a reasonably competent manner. As a result, the DOL presented a settlement offer that was very unfavorable to Global Horizons. As a part of the proffered settlement agreement, Global Horizons would pay substantial fines and effectively be put out of business.

27. Mr. Wilson did not object to this unfavorable offer and instead pressured Mr. Orian to accept the settlement offer.

28. In good conscience, Mr. Orian believed that the settlement agreement was neither fair nor appropriate because Mr. Wilson had not adequately presented the entire facts and legal defenses. Mr. Orian informed Mr. Wilson that Global Horizons wanted to reject the settlement.

29. Mr. Wilson was upset by Mr. Orian's decision. Mr. Wilson stated that Mr. Orian's decision would result in criminal liability and that large fines would be assessed against Mr. Orian and Global Horizons. Mr. Wilson did not communicate this information as advice. Rather, Mr. Wilson placed enormous pressure on Mr. Orian to accept the terms of the settlement agreement and informed Mr. Orian that no alternatives existed.

30. While Mr. Orian was considering the settlement offer but before he had made any decision, on or about May 22, 2006, the Department of Labor issued a press release falsely announcing that the administrative judge had found Global liable for numerous labor law violations.

31.    This press release contained numerous factual errors, yet was published in newspapers across the nation. Mr. Orian asked Mr. Wilson to seek a retraction from the Department of Labor of its erroneous press release. Mr. Wilson refused to help Mr. Orian, and instead informed Mr. Orian that he must go forward with the settlement.

32.    As a result of the false press release, Global Horizons has lost current and potential business. For example, a consulate officer in Hawaii relied on the false press release to refuse to process Global Horizons' applications to obtain immigration visas for foreign workers who are seeking lawful employment. Similarly, an opposing party in an unrelated litigation action in the Central District of California submitted the press release to the court as evidence that Global Horizons engaged in labor violations.

33.    Mr. Orian informed Mr. Wilson that Global Horizons disapproved of and was unhappy with Mr. Wilson's inability or unwillingness to assist Global Horizons with the crisis caused by the false press release.

34.    Shortly thereafter, Global Horizons and Mr. Wilson terminated their business relationship. Mr. Orian and Mr. Wilson continued to discuss their disagreement with the fees that Mr. Wilson had charged to Global Horizons.

35.    Mr. Orian hired a different law firm to represent him in the ongoing DOL Proceeding.

**FIRST COUNTERCLAIM**
**(Breach of Contract)**

36.    Global reallege and incorporate by reference the preceding paragraphs.

37.    On or about April 15, 2005, Global Horizons and Plaintiff entered into an agreement by which Plaintiff agreed to provide Global with legal services that would not

7

exceed more than $15,000 to $20,000 per month, and totaling no more than $200,000 to $250,000, to competently represent Global in the DOL Proceeding and bring the proceeding to a resolution.

38.     Global Horizons performed all conditions of the contract.

39.     Plaintiff breached this agreement by failing to provide reasonably competent representation to Global.  Plaintiff failed to pursue a viable legal defense, seek necessary discovery, defend against oppressive discovery requests, adequately prepare the case, and competently advocate Global's position both in the proceeding generally and in settlement negotiations specifically.  Plaintiff also failed to respond to the false press release that announced that Global were found liable for an action that had not been resolved.

40.     Plaintiff also breached this agreement by knowingly and willingly charging fees in excess of the agreed upon maximum monthly rate of $15,000 to $20,000 and knowingly and willingly charging fees in excess of the agreed upon total rate of $200,000 to $250,000 for resolving the case.

41.     As a result of Plaintiff's breaches, Global have suffered and will continue to suffer damages, including but not limited to the costs of retaining other counsel to properly present a defense in the DOL Proceeding.  In addition, Global have suffered and will continue to suffer damage to its business relationships, reputation, good will, lost business opportunities and lost profits arising from Plaintiff's failure to properly represent them in the DOL Proceeding.  Global also have suffered and will continue to suffer damage to their business relationships, reputation, good will, and lost business opportunities arising from

8

Plaintiff's false allegation that Global did not fulfill its contractual obligations to Plaintiff.

## SECOND COUNTERCLAIM
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

42.     Global reallege and incorporate by reference the preceding paragraphs.

43.     On or about April 15, 2005, Global Horizon and Plaintiff entered into an agreement under which Plaintiff agreed to provide Global with legal services.

44.     This agreement gave rise to Plaintiff's duty to act fairly and in good faith with respect to meeting its obligations under such agreement. Implied in the agreement is Plaintiff's obligation to act fairly and in good faith with Global and to refrain from depriving Global of the benefit of the agreement.

45.     Plaintiff has breached the implied covenant of good faith and fair dealing by, among other things:

   a.   Failing to provide competent legal services to Global, including but not limited to failing to present proper and good faith legal defenses, failing to become adequately familiarized with the facts of the case before representing Global at hearings and conferences, failing to negotiate a favorable settlement agreement, and failing to competently conduct discovery by seeking necessary discovery and protecting against oppressive discovery requests;

   b.   Failing to charge fair compensation for BCR's services, including but not limited to charging excessive fees for incidents such as travel, exaggerating time spent in meetings and conversations with other lawyers who reported spending less time in such meetings and conversations, and charging fees for services that Plaintiff failed to provide competently;

9

  c. Charging Global Horizons an amount exceeding $15,000 to $20,000 per month after Plaintiff represented that $20,000 would be the maximum monthly amount charged to Global Horizons; and

  d. Charging Global Horizons a total amount for his services exceeding $200,000 to $250,000 after Plaintiff represented that $200,000 to $250,000 would be the maximum total amount charged to Global Horizons for bringing the case to a resolution.

 46. As a result of Plaintiff's breaches, Global have been damaged and will continue to suffer damage to its business reputation, good will, and the loss of business opportunities and profits they would have made but for Plaintiff's acts, in an amount to be proven at trial.

## THIRD COUNTERCLAIM
### (Promissory Estoppel)

 47. Global reallege and incorporate by reference the preceding paragraphs.

 48. On or about April 15, 2005 Global Horizons and Plaintiff entered into agreement by which Plaintiff agreed to provide Global with legal services.

 49. Plaintiff promised Global that Plaintiff would not charge Global Horizon more than the monthly amount of $15,000 to $20,000 that Global currently paid to its existing lawyers. Plaintiff also represented that Global will not pay more than $200,000 and $250,000 for the entire case to be resolved.

 50 In doing so, Plaintiff knew or should have known that Global would be reasonably induced to rely on these assurances and promises that the monthly charges for Plaintiff s services would not exceed $15,000 to $20,000 and that the total cost of representing Global would not exceed the amount of $200,000 to $250,000.

51.     Global reasonably relied on Plaintiff's promises and assurances, which induced Global to hire Plaintiff and not seek alternative representation.

52.     Despite Global's repeated demands that Global Horizons not pay more than $15,000 to $20,000 each month and a total amount of nor more than $200,000 to $250,000 to resolve the case, Plaintiff charged Global Horizons more than $20,000 per month and in excess of $250,000 in total without bringing the case to a resolution.

53.     As a result of Plaintiff's refusal to keep its monthly and total costs to the levels it promised, Global have suffered, in an amount subject to proof at trial, among other things, damages in the amount of retaining new attorneys to handle the case properly, damages to their business reputation and good will, and damages from the loss of business opportunities and profits they would have made but for Plaintiff's failure to resolve the DOL Proceedings in an expeditious, competent, and cost-effective manner.

54.     Injustice can be avoided only be enforcing Plaintiff s promises and assurances to charge Global Horizons no more than $20,000 per month for competent legal services.

### FOURTH COUNTERCLAIM
**(Fraud and Misrepresentation)**

55.     Global reallege and incorporate by reference the preceding paragraphs.

56.     On or about April 15, 2005, Global Horizons and Plaintiff entered into agreement by which Plaintiff agreed to provide Global with legal services.

57.     Plaintiff represented at the time that such agreement was executed by the parties that Plaintiff would provide competent legal services and that Plaintiff would not charge more than $15,000 to $20,000 per month, and in total no more than $200,0000 to $250,000 to resolve the case.

58.     Plaintiff knew at the time it made those representations that those representations were false and misleading. Plaintiff concealed the facts that it could not provide competent representation in the DOL Proceeding, and that it would charge more than $20,000 per month and more than $200,000 to $250,000 in total for its services.

59.     Plaintiff knew that Global Horizons would rely on those false representations in entering the agreement. Plaintiff intended to bind Global Horizons to the agreement to the harm and detriment of Global.

60.     Global reasonably relied on Plaintiff's representations that it would provide competent representation for certain monthly and total amounts. But for such misrepresentations, Global Horizons would not have entered into an agreement with Plaintiff to retain its services.

61.     Global Horizons was harmed by Plaintiff's misrepresentations in that Global Horizons has been issued bills for legal fees and costs that exceeded promised amounts and for services that were not reasonably competent. Global also were harmed by Plaintiff's misrepresentations in that, in reliance on those misrepresentations, Global did not seek other counsel that would have provided competent legal representation at rates that would not exceed $20,000 per month and $200,000 to $250,000 for the entire case.

62.     Wherefore, Global pray that this Court award Global damages for their losses for performing under the agreement and for their losses for being unable to retain other lawyers to represent them at a fair market rate and such other relief as this Court may find just.

## FIFTH COUNTERCLAIM
**(Unjust Enrichment)**

63.     Global reallege and incorporate by reference the preceding paragraphs.

64. As a result of the actions of Plaintiff described above, Plaintiff has received and retained money for competent representation that Plaintiff in fact failed to provide to Global. Plaintiff has benefited from retaining the principal, interest, and profits that Global Horizons otherwise would have retained but for Plaintiff's misrepresentations that it was providing Global Horizons with competent legal services at a fair market value.

65. Plaintiff was not entitled to the money, interest, and profits it received from Global Horizons because Plaintiff did not provide competent legal counselor stay within the promised budget of $20,000 per month or $200,000 to $250,000 in total.

66. Plaintiff knew, or reasonably should have known, that it received and retained money, interest, and profits rightfully belonging to Global Horizons to which Plaintiff was not entitled. Plaintiff acted intentionally, willfully, deliberately, maliciously, and in bad faith to injure Global. Global have no adequate remedy at law for many of these injuries.

67. It would be unjust for Plaintiff to retain the benefits conferred upon it as a result of its failure to provide competent legal services, charging of excessive legal fees, deceptive acts to bind Global to financial obligations that were not owed, and its continuance of these practices while knowing of the harm it causes Global Horizons. Global therefore is entitled to the imposition of a constructive trust of Plaintiff s business, assets, and profits, in an amount determined at trial.

### SIXTH COUNTERCLAIM
**(Legal Malpractice)**

68. Global reallege and incorporate by reference the preceding paragraphs.

69. Global Horizons retained Plaintiff as counsel for Global to provide legal services in representing Global in an administrative action initiated by the U.S. Department

of Labor. Plaintiff agreed to provide legal representation, and thereafter provided legal representation on behalf of Global.

70. Arising from this client-attorney relationship, Plaintiff had the duty to defend vigorously the rights of Global, the duty to protect the client from harm, the duty to provide effective assistance of counsel, and the duty to charge reasonable fees.

71. Plaintiff breached its duty to defend by failing to present meritorious defenses, failing to be adequately prepared for hearings and conferences, failing to negotiate a favorable settlement offer, failing to seek necessary discovery, failing to protect Global from overreaching and oppressive discovery, failing to advocate for Global's interests, and advising Global to accept a settlement offer that would cause the collapse of Global Horizons.

72. Plaintiff breached the duty to protect the client from harm by failing to present a cognizable legal defense, failing to negotiate a favorable settlement offer, and failing to redress the harm arising from opposing party's premature and false press release that was published in newspapers across the world.

73. Plaintiff breached the duty to charge reasonable fees by overcharging the client for services rendered, charging the client for services never performed, and failing to provide the value of the services for which payment was received.

74. Plaintiff breached its duties to Global by failing to provide effective assistance of counsel and competent representation.

75. But for Plaintiff's acts and omissions, Global would have paid for competent

representation to conduct discovery in a reasonably competent manner and present a cognizable and meritorious defense that, more likely than not, would have established Global's lack of liability for the alleged labor violations.

76. Global have suffered and continue to suffer damages in an amount to be determined at trial arising from Plaintiff's acts and omissions. Specifically, Global have incurred substantial costs in retaining competent counsel to present the defenses that Plaintiff failed to present n the administrative proceedings and to undo the damage arising from Plaintiff's failure to represent Global's interests. Global have incurred untold damage to its reputation, good will, lost business opportunities, and lost profits arising from individuals, who relying on the press release published in newspapers, have refused to continue or enter into business dealings with Global.

## SEVENTH COUNTERCLAIM
### (Breach of Fiduciary Duty)

77. Global reallege and incorporate by reference the preceding paragraphs.

78. Global Horizons retained Plaintiff as counsel for Global to provide legal services in representing Global in an administrative action initiated by the DOL. Plaintiff agreed to provide legal representation, and thereafter provided legal representation on behalf of Global.

79. Arising from this client-attorney relationship, Plaintiff owed to Global a fiduciary duty.

80. Plaintiff breached its fiduciary duty by failing to obtain from Global informed consent regarding Plaintiff's representation of conflicting interests.

81.     Plaintiff breached its fiduciary duty by misleading Global as to the fee arrangement, overcharging for services rendered, charging for services never performed, and failing to provide the value of the services for which payment was received.

82.     Global have suffered and continue to suffer damages in an amount to be determined at trial arising from Plaintiff's acts and omissions.

WHEREFORE, Global request that the Court enter judgment in their favor and against Plaintiff on all counterclaims as follows:

A.     An order adjudging and decreeing that Plaintiff has either

  i.     breached the express contract as set forth herein; or

  ii.    committed acts that intended to and in fact induced reasonable reliance for Global Horizons to enter an agreement with Plaintiff as set forth herein;

B.     For profits, compensatory damages, and restitution for Plaintiff's breach of contract and other unlawful acts as alleged herein;

C.     For an accounting and disgorgement to Global Horizons by Plaintiff of all gains realized by it for reason of its unlawful acts as alleged herein;

D.     For exemplary or punitive damages in an amount to be determined at trial;

E.     For reasonable attorneys' fees, costs, and expenses;

F.     For prejudgment interest; and

G.     For all other relief that the Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Global demand a trial by jury of all issues so triable.

Dated: March 19, 2008                                          Respectfully submitted by ,

| Chrystal L. Bobbitt, Esq.<br>By:   /s/ Chrystal L. Bobbitt<br>Chrystal L. Bobbitt (CA Bar # 218544)<br><br>11111 Santa Monica Blvd. Suite 1440<br>Los Angeles, CA. 90025<br>P: 310.234.8475 x106<br>F: 310.234.0786<br>chrystal@gmpusa.com<br>*Lead Counsel for Global Mordechai Orian and Global Horizons, Inc.* | MESIROW & STRAVITZ, PLLC<br>By:    /s/ Eric N. Stravitz<br>Eric N. Stravitz  (D.C. Bar #438093)<br><br>1307 New Hampshire Avenue, NW<br>Suite 400<br>Washington, DC 20036<br>P:  (202) 463-0303<br>F: (202) 861-8858<br>Eric@metroDClaw.com<br>*Local Counsel for Global Mordechai Orian and Global Horizons, Inc.* |
|---|---|

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

John Tremaine May:       jmay@jocs-law.com
Eric N. Stravitz:              Eric@metroDClaw.com

Dated this 19th day of March, 2008

 /s/ Chrystal L. Bobbitt, Esq.
Chrystal L. Bobbitt
Pro Hac Vice Counsel

17